OPINION OF THE COURT
Beverly S. Cohen, J.
This is an action brought by plaintiffs for the recovery of damages under the provisions of Civil Rights Law § 70-a, which provides a cause of action for alleged victims of "SLAPP” suits (Strategic Lawsuits Against Public Participation).
In 1992, the Legislature enacted Civil Rights Law §§ 70-a and 76-a to protect citizen activists from lawsuits brought against them in retaliation for their public advocacy. This *649 legislation permits a defendant in an action "involving public petition and participation * * * [to] maintain an action * * * to recover damages * * * from any person who commenced or continued such action.” (Civil Rights Law § 70-a [1].)
Defendants originally moved to dismiss this case pursuant to CPLR 3211. The motion to dismiss was converted by this court into a motion for summary judgment pursuant to CPLR 3212 (b) and (h). Plaintiffs have filed two cross motions.[1] Summary judgment in favor of the defendants is now granted, therefore plaintiffs’ cross motions will not be addressed.
I
Sea Gate is a private community of homes in the Coney Island section of Brooklyn, New York. Sea Gate Association, Inc. (the Association) is a not-for-profit corporation, which serves as a homeowners’ association for the Sea Gate community. In 1990, the Board of Directors of the Association (the Board) sought permission from the New York Department of Environmental Conservation (the DEC) to place material along the community’s shoreline in order to protect Sea Gate from the potentially harmful effects of "high wave energy” transferred from the Atlantic Ocean to the shoreline.[2]
Following the DEC’s denial of permission for the shoreline stabilization program the Board authorized waste haulers to place a substantial amount of concrete, asphalt, brick and metal bars along the shoreline. The Board’s failure to obtain a permit from the DEC prior to the placement of such material on Sea Gate’s shoreline resulted in the DEC’s imposing a substantial monetary fine upon the Association, as well as requiring the Board to institute the removal of the illegally" placed material.
Several disgruntled members of the Association, including plaintiffs named herein, felt the Association should not bear the full cost of the DEC sanctions, and sought to uncover the names of the waste haulers by filing a lawsuit in Kings County in 1993 (the Brody Suit).
*650 Meanwhile, in December 1992 Sea Gate suffered a significant amount of damage from a severe winter storm. The Board decided to seek a loan from the United States Small Business Administration (the SBA) for the purpose of repairing damage caused by the storm. After the SBA approved the Board’s loan application, certain homeowners in the Sea Gate community[3] managed to delay the Board’s receipt of the loan proceeds.[4]
Plaintiffs claim the Association then filed a SLAPP suit (the Wohlhender Suit) in 1993, designed to keep them from learning the identity of the waste haulers. The Wohlhender Suit sought to recover damages allegedly caused by disgruntled Sea Gate homeowners’ opposition to the disbursement of the SBA loan. Plaintiffs herein were subsequently dropped as defendants from the Wohlhender Suit, which is the basis for this action.
II
Legislation adopted in chapter 767 of the Laws of 1992 amended to the Civil Rights Law §§ 70-a and 76-a, which were specifically designed to protect those citizens who, usually before a government agency, publicly challenge applications by developers or other businesses for environmental and land use permits, leases, licenses or other approvals. The Legislature recognized that such retaliatory lawsuits brought by developers and businesses, typically claiming damages in the millions of dollars and cloaked with accusations of libel, slander, interference with contract, and defamation, are rarely successful on the merits. However, they are likely to achieve their primary purpose of intimidating opponents and stifling public scrutiny and debate on matters of public policy.
Thus, in adopting the new anti-SLAPP law, the Legislature has declared "it to be the policy of the state that the rights of citizens to participate freely in the public process must be *651 safeguarded with great diligence. The laws of the state must provide the utmost protection for the free exercise of speech, petition and association rights, particularly where such rights are exercised in a public forum with respect to issues of public concern.” (L 1992, ch 767, § 1.)
The new legislation seeks to remedy the growing concern over SLAPP suits in several ways. First, the amendment allows "[a] defendant in an action involving public petition and participation * * * [to] maintain an action, claim, cross claim or counterclaim to recover damages, including costs and attorney’s fees, from any person who commenced or continued such action.” (Civil Rights Law § 70-a [1].) An "action involving public petition and participation” is defined by section 76-a (1) (a) as "an action, claim, cross claim or counterclaim for damages that is brought by a public applicant or permittee, and is materially related to any efforts of the defendant to report on, comment on, rule on, challenge or oppose such application or permission.”
Section 76-a (1) (b) then defines "public applicant or permit-tee” as "any person who has applied for or obtained a permit, zoning change, lease, license, certificate or other entitlement for use or permission to act from any government body.”
Defendants in actions involving public petition and participation may recover costs and attorney’s fees "upon a demonstration that the action * * * was commenced or continued without a substantial basis in fact and law.” (Civil Rights Law § 70-a [1] [b] .) Furthermore, defendants may recover other compensatory damages "upon an additional demonstration that the action * * * was commenced or continued for the sole purpose of harassing, intimidating, punishing or otherwise maliciously inhibiting the free exercise of speech, petition or association rights” (Civil Rights Law § 70-a [1] [c]) and punitive damages may be recovered as well if the action was commenced or continued with the sole purpose of harassing or intimidating.
At the same time, the Legislature amended CPLR 3211 and 3212, allowing defendants in actions involving public petition and participation to obtain quick dismissal or summary judgment unless the plaintiff can demonstrate that "the cause of action has a substantial basis in law or is supported by a substantial argument for an extension, modification or reversal of existing law.” (CPLR 3211 [g]; 3212 [h].) Prior to adoption of the new legislation, plaintiffs in actions involving public petition and participation needed only demonstrate a reasonable basis in fact or law to defeat a motion to dismiss or motion for summary judgment.
*652 III
Plaintiffs herein, however, do not have a cause of action under Civil Rights Law § 70-a because they were never defendants[5] in an "action involving public petition and participation” as defined by section 76-a (1) (a). In order for an alleged SLAPP suit to be an "action involving public petition and participation”, such a suit must be brought by a public applicant or permittee and must be "materially related to any efforts of the defendant to report on, comment on, rule on, challenge or oppose such application or permission. ” (Civil Rights Law § 76-a [1] [a] [emphasis added].)
The Association’s permit application to the DEC established it as a public applicant in that instance. (Civil Rights Law § 76-a [1] [b].) However, plaintiffs were unaware of the Association’s application to the DEC at the time it was made, and never participated in the application process in any manner. The Brody Suit, which plaintiffs commenced three years after the Board was denied permission to place material along the shoreline, could not have been an effort to "report on, comment on, rule on, challenge or oppose” the Association’s 1990 application.[6] Thus, with respect to the DEC application, the plaintiffs are missing an element necessary to receive protection under section 70-a. That is, they never made any effort with respect to defeating any application or permission.
However, plaintiffs argue that the new law, as a remedial statute, should be interpreted broadly to cover almost all types of retaliatory lawsuits. They contend that because there is a question of fact as to whether the Wohlhender Suit was in retaliation for plaintiffs’ efforts to uncover the names of the illegal dumpers, they should have a cause of action under Civil Rights Law § 70-a.
This argument is without merit. The new anti-SLAPP law creates a new right of action for victims of SLAPP suits. It places new restrictions on the ability of public applicants to seek redress from the courts by requiring them to demonstrate their claims contain a substantial, rather than merely a reasonable, basis in fact or law. As such, the new anti-SLAPP law *653 is in derogation of the common law. It is well established that statutes in derogation of the common law are to be construed narrowly. (McKinney’s Cons Laws of NY, Book 1, Statutes § 311; see also, Transit Commn. v Long Is. R. R. Co., 253 NY 345; Hawkins v County of Oneida, 267 App Div 547; Montalto v Westchester St. Transp. Co., 102 AD2d 816; Dollar Dry Dock Bank v Piping Rock Bldrs., 181 AD2d 709.) Therefore, plaintiffs must directly challenge a license or permit application in order to establish a cause of action under Civil Rights Law § 70-a.
The plaintiffs’ next argument is that the Association is a public applicant by reason of its application for a loan from the SBA. This argument is incorrect. A loan application is not an application for an "entitlement for use or permission to act from [a] government body.” (Civil Rights Law § 76-a [1] [b].) On the contrary, a loan application is a request for money, which if granted is not an entitlement for use or permission to act, but rather an obligation that must be repaid with interest.
Additionally, the plaintiffs allege the Wohlhender Suit was in retaliation for their attempt to forestall the Association’s loan application; but at the same time the plaintiffs contend they never communicated with the SBA! This perplexing argument is not addressed by the court, since the SBA application does not fall within the purview of the anti-SLAPP statute.
In order for the plaintiffs to defeat the defendants’ motion for summary judgment there must be a material issue of fact in dispute. Although the parties clearly do not agree on several issues of fact, none of them is relevant to the question of whether the plaintiffs are entitled to relief under the Civil Rights Act. Accordingly, the defendants’ motion for summary judgment is granted. The cross motions are denied.

. The first cross motion calls for sanctions against each opposing attorney in the amount of $10,000 on the grounds that: (1) the attorneys’ briefs "fail to mention the leading cases”, and (2) the attorneys have made "false statements knowing same to be false”; the second cross motion requests that the law firm of Sive, Paget & Riesel be disqualified from representing Sea Gate Association on the grounds that members of the firm may be potential witnesses in this lawsuit.

. The plaintiffs in the present suit have admitted they were unaware of the Board’s attempt to obtain a permit from the DEC at the time the permit was sought.

. Whether plaintiffs in this action were among this group of homeowners is in dispute; nevertheless, such a determination is irrelevant to the disposition of the instant motion.

. It is in dispute whether the homeowners’ primary motive for attempting to delay the Board’s receipt of loan proceeds was the homeowners’ concern over increased assessments, or their concern that the Board would misappropriate loan proceeds by paying DEC fines and legal fees connected with the illegal "dumping” controversy. Nevertheless, such a determination is irrelevant to the disposition of this motion. However, it is noteworthy that the SBA decided to proceed with funding the Association, after the Attorney-General for the Eastern District of New York investigated the homeowners’ complaints, and concluded that the Board would not use loan proceeds for improper purposes.

. This court does not address whether plaintiffs herein lack standing as a result of having been dropped from the prior alleged SLAPP suit.

. If the Brody Suit had been an effort to enjoin the Association from allowing dumping in the absence of a permit, or had it been an effort to stop the DEC from granting permission to the Association to participate in shoreline stabilization, then perhaps it would have been the kind of activity intended to be protected by the statute.