OPINION OF THE COURT
Sheila Abdus-Salaam, J.
This is an action brought by a women’s clothing manufacturer against individual garment factory workers, two nonprofit organizations, and officials of the nonprofit organizations. Plaintiff Street Beat claims that defendants caused two retailers, Sears Roebuck & Co. (Sears) and Charming Shoppes/ Fashion Bug (Charming Shoppes), to stop buying goods from Street Beat through a publicity campaign of falsely claiming that Sears and Charming Shoppes profit from goods made for plaintiff in sweatshops. The alleged purpose of this publicity effort was “to extort an exorbitant settlement from plaintiff’ (complaint tj 22) in a Federal action that the workers had commenced in the United States District Court for the Eastern District of New York against Street Beat and garment factories that were contractors of Street Beat. In the Federal action, the garment workers alleged, inter alla, that they were forced to work 100 hours or more per week; that they received submini-mum wages that were covered up through false employment records; and that they were retaliated against when they asserted their rights. They also claimed that approximately 95% of the garments prepared by the defendant factories were *449 produced for Street Beat, and that the manufacturer completely controlled and dominated the factories.
In this action sounding in tortious interference with business relationships, Street Beat asserts that defendants wrote to Sears and Charming Shoppes, demanding that they cease selling plaintiffs goods until the workers in the Federal action were paid $280,000 and that plaintiff “falsely claimed that workers were forced to work £as many as 137 hours a week’ to fabricate garments sold by plaintiffs customers.” (Complaint 23.) Plaintiff also alleges that defendants held press conferences and rallies at Sears and Charming Shoppes, urging consumers to boycott those stores, and that defendants “used mob violence to intimidate workers and community organizers and during which defendants illegally and violently attacked persons in attendance who disagreed with their position.” (Complaint 24.)
Street Beat claims that as a result of defendants’ activities, Sears failed to take delivery of goods ordered from plaintiff and refused to order any more of plaintiffs merchandise, and that Charming Shoppes refused to order any more of plaintiffs merchandise. Plaintiff seeks compensatory damages of not less than $5 million and exemplary damages of $10 million for the interference with its business relationship with Sears, and compensatory damages of not less than $50 million and exemplary damages of $10 million for the interference with its business relationship with Charming Shoppes.
The garment worker defendants have moved for an order pursuant to CPLR 3211 (a) (1), (7) and (g) dismissing the complaint and defendant Asian American Legal Defense and Education Fund (AALDEF) has cross-moved for the same relief. Plaintiff has since discontinued its action against the garment worker defendants.
Subsequent to the filing of the aforementioned motions, the remaining defendants moved for summary judgment dismissing the complaint, and plaintiff cross-moved for partial summary judgment on the issue of liability. All of the motions are consolidated here for purposes of disposition.
ASIAN AMERICAN LEGAL DEFENSE AND EDUCATION FUND
AALDEF represented all of the garment worker defendants who are named in this suit, as well as two other workers, in *450 the Federal action in which the workers were plaintiffs.* In support of its motion for dismissal of the complaint against it, AALDEF argues that plaintiff has only included it as a defendant here because of its representation of those workers in the Federal lawsuit, and that there is no connection between AAL-DEF and the acts that are alleged in the complaint.
AALDEF has demonstrated that the complaint should be dismissed for failure to state a cause of action. The complaint does not contain any specific allegations that AALDEF participated in the activities set forth in the pleading. Rather, the complaint contains conclusory allegations, based upon information and belief, that AALDEF, National Mobilization Against Sweatshops (NMAS) and Chinese Staff and Workers Association (CSWA) “have joint operations overlapping membership, ownership, participation and control” (complaint 7), and that “each of the defendants was the agent or joint venturer of and working in concert with the other defendants and confirmed and ratified the acts of the other defendants set forth in this complaint.” (Complaint 25.)
In response to AALDEF’s argument that plaintiff has not sufficiently pleaded facts to sustain an alter ego theory, plaintiff asserts that its claims against AALDEF for the actions of NMAS and CSWA are not based on an alter ego theory, but on an agency theory. However, the elements of agency necessary to impose liability on AALDEF are not included in the complaint, and are not supported by the evidence submitted in connection with the motion. The affidavit of Street Beat’s President, Albert Papouchado, is replete with theories and claims that are not based on the affiant’s personal knowledge. There is no allegation or proof that AALDEF had any right to control the actions of NMAS or CSWA, an essential element of a claim for agency liability (Basic Books v Kinko's Graphics Corp., 758 F Supp 1522, 1545 [SD NY 1991]). To the contrary, the affirmation of Kenneth Kimerling, Legal Director of AALDEF, which is not rebutted by any proof supplied by plaintiff, reveals that AALDEF is not affiliated with NMAS or CSWA, does not fund or control those organizations, and did not work in concert with any other defendant named in the complaint.
STRATEGIC LAWSUIT AGAINST PUBLIC PARTICIPATION (SLAPP)
AALDEF, and the other remaining defendants who seek summary judgment, have demonstrated that this is a SLAPP *451 suit. “The SLAPP Statute is intended to prevent well-heeled public permit holders (or those seeking such permits) from using ‘the threat of personal damages and litigation costs * * * as a means of harassing, intimidating or * * * punishing individuals, unincorporated associations * * * and others who have involved themselves in public affairs’ by opposing them. See Citizen Participation Act, 1992 Consol. Laws, ch. 767 Sect. 1 (effective January 1, 1993).” (Adelphi Univ. v Committee to Save Adelphi, NYLJ, Feb. 6, 1997, at 33, cols 2, 3.) In passing the anti-SLAPP legislation, the Legislature declared “ ‘it to be the policy of the state that the rights of citizens to participate freely in the public process must be safeguarded with great diligence’ ” and that “ ‘[t]he laws of the state must provide the utmost protection for the free exercise of speech, petition and association rights, particularly where such rights are exercised in a public forum with respect to issues of public concern.’ ” (Allan & Allan Arts v Rosenblum, 201 AD2d 136, 143-144, lv denied 85 NY2d 921, cert denied 516 US 914, quoting L 1992, ch 767, § 1.)
This is “[a]n ‘action involving public petition and participation’ ” because it is “brought by a public applicant or permittee, and is materially related to any efforts of the defendant [s] to report on, comment on, rule on, challenge or oppose such application or permission.” (Civil Rights Law § 76-a [1] [a].) A “ ‘[p]ublic applicant or permittee’” is defined as “any person who has applied for or obtained a permit, zoning change, lease, license, certificate or other entitlement for use or permission to act from any government body” (Civil Rights Law § 76-a [1] [b]).
Plaintiff argues here that this cannot be a SLAPP suit because plaintiff, a garment manufacturer, is merely a “registrant” under the Labor Law as opposed to an “applicant” or “permittee.” It is true that New York’s Labor Law requires manufacturers and contractors in the apparel industry to register with the Commissioner of Labor (Labor Law § 341 [1]). However, article 12-A of the Labor Law, which includes sections 340 through 348, also creates a special task force for the apparel industry and gives that task force extensive powers to inspect the books, records and premises of manufacturers and contractors in order to determine compliance with the Labor Law, including minimum wage, overtime compensation and safety requirements (Labor Law § 344). Labor Law § 345 (8) provides that the Commissioner may revoke the registration of any manufacturer or contractor for a period ranging from 30 *452 days to one year upon a finding of guilty of a second violation of the same provision of article 12-A within any two-year period. Thus, as is pointed out by defendants, the fact that the Labor Law uses the term “registrant” as opposed to “applicant” or “permittee” does not change the fact that plaintiff can only operate its business with the permission of the Labor Commissioner. Here, like the situation before the court in Adelphi Univ. v Committee to Save Adelphi (NYLJ, Feb. 6, 1997, supra, at 33, col 4), the plaintiff is a public permittee because it “continues to be subject to state oversight.”
Plaintiff, citing the First Department’s decision in Bell v Little (250 AD2d 485), also argues here that this is not a SLAPP suit because it does not “affect defendant [s]’ rights of public petition and participation before public agencies.” In Bell (supra), the Court found that plaintiffs complaint, which alleged that defendant inscribed false and malicious statements on building exteriors and sidewalks, was not a SLAPP suit. In so doing, the Court cited Justice Beverly Cohen’s decision in Harfenes v Sea Gate Assn. (167 Misc 2d 647). In Harfenes (supra, at 652) Justice Cohen ruled that members of a homeowners association who were being sued by the Association could not recover damages under the SLAPP statute (Civil Rights Law § 70-a) because they were missing an element necessary to receive the protection of the statute — “they never made any effort with respect to defeating any application or permission” as required under Civil Rights Law § 76-a (1) (a). Noting that the anti-SLAPP law was in derogation of the common law, and thus must be construed narrowly, Special Term concluded that the plaintiffs did not have a cause of action under Civil Rights Law § 70-a, because they were never defendants in an “action involving public petition and participation” as defined by section 76-a (1) (a).
Defendants have cited some lower court decisions from the Second Department which indicate a more expansive construction of the anti-SLAPP law than is found in this Department. For example, in Adelphi Univ. v Committee to Save Adelphi (supra), the Supreme Court, Nassau County, found that a SLAPP counterclaim stated a cause of action where statements by the counterclaiming defendant were made to the press, and not directly tó a government agency. The court found that “[i]f a ‘public applicant or permittee’ is permitted to bring a baseless suit against an opponent for statements made in the press, the chilling effect on the public debate will be just as great — if not greater — than a suit based on statements made directly to *453 the government.” (Adelphi Univ. v Committee to Save Adelphi, supra, at 33, col 4.)
In Long Is. Assn. for AIDS Care v Greene (NYLJ, Oct. 7, 1997, at 28, col 4), the Supreme Court, Suffolk County, found that defendant had stated a counterclaim for violation of Civil Rights Law § 76-a where she had been sued by the Association for injury to reputation for making allegedly false allegations about the Association to the press as well as to corporate supporters. In that decision, there is no indication that defendant had made any statements directly to a public agency. Yet, the court held that defendant had a valid counterclaim based upon the anti-SLAPP law.
Plaintiff is correct in its assertion that this Department has construed the anti-SLAPP statute narrowly. However, even under a narrow construction, this lawsuit has all of the earmarks of a SLAPP suit. Plaintiff would have this court focus only on the actions that are alleged in the complaint — the letter writing to Sears and Charming Shoppes and the rallies and press conferences conducted in the stores. Those were not activities which directly challenged, before a public agency, Street Beat’s license or permit application to conduct business. However, when considering the larger picture, it is evident that some of the very defendants who are named here were complainants in State and Federal proceedings involving Street Beat and/or its contractors.
In June 1998, the Attorney General of the State of New York brought a petition against Hua Great Procetech, Inc., one of Street Beat’s contractors, alleging violations of the Labor Law. The petition was supported by affidavits of four of the garment worker defendants named in this action. The violations included failure to pay adequate wages, requiring workers to work seven days per week, and then firing the workers when they complained. Summary judgment was granted in favor of petitioner, and respondent was ordered to reinstate the workers and pay restitution and back pay. In August 1998, several of the garment worker defendants named in this lawsuit filed a complaint with the National Labor Relations Board against Street Beat and some of its contractors, alleging Federal Labor Law violations. Thus, some of the same defendants named here had indeed taken actions before public agencies with respect to the right of Street Beat and its contractors to operate as a registered business.
One month prior to the filing of the petition by the Attorney General, the garment workers had commenced their action in *454 Federal court. The instant action (commenced in September 1998) when viewed in the context of the Federal lawsuit brought in April 1998, the Attorney General’s proceeding brought against Street Beat’s contractor in June 1998, and the complaint filed with the National Labor Relations Board against Street Beat in August 1998, has all of the indicia of a retaliatory SLAPP suit. Significantly, every one of the 13 workers who were named in this suit were plaintiffs in the Federal lawsuit. As is pointed out by AALDEF, the order of names of the workers listed as defendants in this action is identical to the order of names of the workers listed as plaintiffs in the Federal action. The workers are not listed alphabetically in either action. The only conclusion to be drawn is that Street Beat took the names of the plaintiffs in the Federal lawsuit and made them defendants here.
Further, the workers who supported the petition filed by the Attorney General and on whose behalf the complaint was filed with the National Labor Relations Board are named as defendants in this action. Thus, the court finds that this suit is “materially related” to the efforts of the workers to report to public agencies regarding violations of State and Federal Labor Law by Street Beat and its contractors.
While this action has now been discontinued against the garment workers, the court concludes that the suit against the remaining defendants also violates the anti-SLAPP law. Plaintiff has alleged that all of the defendants are working in concert with the other defendants, revealing plaintiff’s intent to treat all of the defendants as acting together. Apparently, Street Beat believed that by suing the garment workers’ counsel, as well as the organizations that represent the interests of garment workers, plaintiff could inhibit the workers from continuing to press their claims of Labor Law violations before State and Federal agencies.
Defendant AALDEF has demonstrated that the complaint against it should be dismissed pursuant to CPLR 3211 (g). That statute provides that a motion made to dismiss for failure to state a cause of action in which the moving party has demonstrated that the action is a SLAPP suit, “shall be granted unless the party responding to the motion demonstrates that the cause of action has a substantial basis in law” (CPLR 3211 [g]). Since, as noted above, the complaint does not contain any specific allegations that AALDEF participated in the activities related to Sears and Charming Shoppes, and does not sufficiently plead facts to support plaintiff’s claim based on an *455 agency theory, plaintiff has not demonstrated that the action against AALDEF has a substantial basis in law.
The remaining defendants are Chinese Staff and Workers Association, Inc., a nonprofit organization dedicated to promoting the rights of Chinese immigrants and to ending indecent working conditions; National Mobilization Against Sweatshops, a project funded by CSWA to aid workers in their pursuit of legal hours and wages; Kristian Bello, a campaign coordinator for NMAS; Wing Shung Lam, Executive Director of CSWA; Trinh Duong, an employee of CSWA who worked with NMAS; and Betty Yu, a volunteer worker at NMAS. Plaintiff has not come forward with proof in admissible form to sustain its claims against these defendants for tortious interference with contractual and business relations, or sufficient to raise a triable issue of fact.
In order to establish the tort of interference with contract, plaintiff must show defendants’ “intentional procurement of the third-party’s breach of the contract without justification” (Lama Holding Co. v Smith Barney, 88 NY2d 413, 424 [emphasis supplied]). The tort of interference with prospective contract rights requires that plaintiff show more culpable conduct than is required for tortious interference with an existing contract (NBT Bancorp v Fleet/Norstar Fin. Group, 87 NY2d 614, 621). Plaintiff has not even met its burden with respect to the tortious interference with contract claim. In order for there to be such a tort, the motive for the interference must be “solely malicious” (M.J. & K. Co. v Matthew Bender & Co., 220 AD2d 488). Here, the allegations of malice are without factual support.
While plaintiff claims that defendants made false representations in the letters sent to Sears and Charming Shoppes, as well as in press conferences and flyers, that claim is not borne out by the proof. Street Beat claims that defendants were attempting to extort an unfair settlement of the Federal action by making a fraudulent misrepresentation that the workers were owed $280,000, when the complaint in the Federal action only sought $138,000 in back wages and overtime. However, as is pointed out by defendants, under applicable Federal statutes, a prevailing plaintiff is entitled to recover not only the wages that are owed, but liquidated damages in the amount of 100% of the back wages owed. Thus, this statement was not a false representation. In fact, in July 1999 the Federal wage action was settled for $285,000!
Further, although Street Beat asserts that claims made in letters and press conferences that some workers worked more *456 than 130 hours in a single week are incredible on their face, these claims are supported by sworn statements and time sheets submitted in the Federal action. And, even if there were some inaccuracies in the statements made to Sears, Charming Shoppes, and the public, plaintiff has fallen far short of demonstrating that defendants acted solely out of malice, as opposed to in furtherance of their goals of obtaining a lawful wage and decent working conditions for workers.
Based upon the foregoing, the motion of defendant AALDEF and the cross motions by all of the defendants are granted. Plaintiffs cross motion for partial summary judgment is denied.

 The Federal action was settled in July 1999.