OPINION OF THE COURT
Carol R. Edmead, J.
In this defamation and fraud action, plaintiff Silvercorp Metals Inc. (Silvercorp) moves pursuant to CPLR 3211 (a) (7) to dismiss the counterclaim of defendant Anthion Management LLC (Anthion).
Factual Background
Silvercorp is a silver producer with mining exploration projects in China and Canada. Silvercorp alleges that Anthion disseminated two letters and published defamatory statements on the Internet on three separate occasions about Silvercorp in order to manipulate and drive down the price of Silvercorp’s stock for Anthion’s personal gain through a “short selling” scheme.[1]
In response, Anthion asserted a counterclaim pursuant to Civil Rights Law §§ 70-a and 76-a (the “anti-SLAPP” [strategic lawsuit against public participation] statute). Anthion claims that Silvercorp commenced this action to “silence” it “as part of a public relations and legal SLAPP . . . campaign to retaliate *662 against, intimidate, and deter good-faith criticism of Silver-corp’s business practices made to appropriate authorities and experts.” (At 14 111; 15 It 3.)
Anthion allegedly discovered inconsistencies in Silvercorp’s financial information as reported to Chinese financial regulators and the Securities and Exchange Commission (SEC), indicating that Silvercorp was engaged in accounting fraud. Anthion prepared a preliminary report (the August 29 report), and sent it anonymously to security regulators, Silvercorp’s auditors, and six of the United States’ and Canada’s most prestigious business journalists from the Wall Street Journal and the New York Times.[2] Thereafter, on September 2, 2011, Silvercorp issued a press release labeling the August 29 report as a short seller “manipulation scheme” and threatened to pursue all legal options to recover damages incurred by the August 29 report.
Following an announcement by the British Columbia Securities Commission (BCSC) that it was investigating the anonymous allegations, Silvercorp issued another press release claiming that the BCSC and SEC were carrying out an investigation of the fraud.
Defendant then prepared a 17-page final report (referred to in the complaint as the September 14 letter) concerning Silver-corp’s valuation and financial reporting, and sent it to the BCSC and Silvercorp’s outside auditors, and posted a copy on www.chinastockwatch.com. It is alleged that by providing this document to Silvercorp’s governmental regulators, Anthion was “commenting on, and challenging the permission Silvercorp enjoys from government regulators to offer securities to the public.”
Silvercorp responded by issuing a press release on September 19, 2011 labeling Anthion’s reports as a manipulation scheme and, again, threatening to pursue legal action. Three days later, Silvercorp commenced this action against Anthion, and threatened in another press release on September 23, 2011 to “hold participants in this scheme . . . accountable.” In connection with this action, Silvercorp issued multiple third-party subpoenas to banks, investors and attorneys for financial records and *663 documents related to Silvercorp. Silvercorp also announced that it had filed criminal complaints in Canada.
Silvercorp now moves to dismiss the counterclaim for failure to state a cause of action. Anthion contends that under section 70-a (1), which must be narrowly construed, a defendant in an action involving public petition and participation may maintain a counterclaim against any person who commenced such action. An action involving public petition and participation is a “SLAPP” action brought by a public applicant or permittee, and is materially related to any efforts of the defendant to report on, comment on, rule on, challenge or oppose such application or permission.
There is no authority indicating that Silvercorp is a “public applicant or permittee” by virtue of its status as a publicly held corporation that must obtain “permission” from securities regulators before issuing shares of stock to be traded on the New York and Toronto stock exchanges. Such an expansive definition of “public applicant or permittee” would effectively subject every publicly held corporation filing a defamation suit in New York to an anti-SLAPP counterclaim. The statute was intended to protect those local citizens who, usually before a government agency, publicly challenge applications by developers or other businesses for environmental and land use permits, leases, and licenses, and the regulatory approval purportedly sought by Silvercorp is nonlocal in nature. Anthion’s allegations, which are directed at Silvercorp’s filings made with federal securities regulators in the United States and Canada, are not what the Legislature envisioned in enacting the antiSLAPP statute.
Additionally, Anthion’s defamatory statements did not directly challenge any pending stock offering or application by Silver-corp to U.S. or Canadian securities regulators for a public offering of stock. Nor did Anthion’s accusations against Silvercorp have any bearing on a decision by regulators to approve any offering of Silvercorp stock.
And, Anthion, which operates a private hedge fund based in New York City, is not a financially-disadvantaged “citizen activist” in need of protection under the anti-SLAPP statute. Anthion does not seek to expose fraud or wrongdoing for the public good, and did not publish its attacks on Silvercorp until after it established a short position in Silvercorp’s stock.
In opposition, Anthion argues that the counterclaim falls within the anti-SLAPP statute. Courts have applied the anti *664 SLAPP statute to applicants or permittees regulated under state and federal statutes. An entity is not a “public applicant or permittee” in circumstances where a government process is optional, and here, Silvercorp is obligated to register its shares, adhere to Canadian and U.S. securities laws and provide regular, accurate financial disclosures to continue listing its shares on the Toronto and New York Stock Exchanges. Silvercorp is subject to regulators with authority to investigate Silvercorp, revoke its registration, or suspend trading of Silvercorp’s shares for failure to comply with securities laws and financial disclosure requirements.
Further, as the anti-SLAPP statute governs nonlocal conduct by permittees, by defining “government body” to include the federal government, there is no requirement that the conduct of applicants or permittees under the anti-SLAPP statute be local in nature.
And, the anti-SLAPP statute’s protections are not limited to financially disadvantaged individuals. Thus, Anthion’s financial position is irrelevant to this case.
Anthion argues that its criticisms of Silvercorp, made to the appropriate regulators, directly challenged Silvercorp’s permission to continue listing its stock on public exchange bodies. The August 29 and September 14 reports were delivered to Canadian regulators, members of the financial press, Silvercorp’s auditors and to the SEC and the public. Silvercorp’s ability to offer shares of its stock publicly is in the nature of a continuing license in that the registration and offering of securities is “ongoing and subject to regulators’ continued oversight, and failure to comply with securities laws can cause the revocation of that permission.” Anthion’s complaints were made directly to Canadian regulators and subsequently the SEC, both of which have the authority to suspend that permission. Thus, whether an additional stock offering was pending at the time Anthion made its complaints is irrelevant.
In matters of public concern, courts have held that the antiSLAPP statute is not limited to complaints made directly to a government agency but rather includes complaints made to the press.
In reply, Silvercorp argues that Anthion never asked that Silvercorp’s permission to list its stock be revoked. The intended audience of the letters Anthion sent was other investors, and not to comment or oppose Silvercorp’s permission to trade its stock publically. Silvercorp points out that Anthion profited *665 “handsomely after its anonymous letter and internet posting drove down Silvercorp’s stock price.” (Reply at 3.) While the August 29 report was addressed to the BCSC, Anthion did not actually send the letter there; nor did Anthion send the September 14, 2011 report to the SEC, but to Canadian regulators. The anti-SLAPP statute does not encompass communications with foreign regulators, such as the BCSC and Ontario Securities Commission. Further, statements to the press and not to a government body, as that term is defined in the statute, are insufficient.
Discussion
“On a motion to dismiss for failure to state a cause of action, the pleading is to be afforded a liberal construction” (McRedmond v Sutton Place Rest. & Bar, Inc., 48 AD3d 258, 259 [1st Dept 2008]). The court must accept the facts as alleged in the pleading as true, accord the claimant “the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory” (McRedmond at 259, quoting Leon v Martinez, 84 NY2d 83, 87-88 [1994]).
Civil Rights Law § 70-a “provides a cause of action for alleged victims of ‘SLAPP’ suits,” which allows “[a] defendant in an action involving public petition and participation . . . [to] maintain an action, claim, cross claim or counterclaim to recover damages, including costs and attorney’s fees, from any person who commenced or continued such action” (Harfenes v Sea Gate Assn., 167 Misc 2d 647, 648, 651 [Sup Ct, NY County 1995], quoting Civil Rights Law § 70-a [1]). An “action involving public petition and participation” is defined by section 76-a (1) (a) as “an action ... for damages that is brought by a public applicant or permittee, and is materially related to any efforts of the defendant to report on, comment on . . . challenge or oppose such application or permission.”
Section 76-a (1) (b) then defines “public applicant or permit-tee” as “any person who has applied for or obtained a permit, zoning change, lease, license, certificate or other entitlement for use or permission to act from any government body.”
“The anti-SLAPP provisions of Civil Rights Law §§ 70-a and 76-a were enacted in 1992 to protect citizen activists from lawsuits commenced by well-financed public permit holders in retaliation for their public advocacy” (Guerrero v Carva, 10 AD3d 105, 116 [1st Dept 2004], citing Harfenes). It was intended for the “protection of citizens facing litigation arising from their public petition and participation” (Bridge Capital Corp. v *666 Ernst, 61 AD3d 496, 496 [1st Dept 2009], quoting 600 W. 115th St. Corp. v Von Gutfeld, 80 NY2d 130, 137 n 1 [1992], cert denied 508 US 910 [1993]; Civil Rights Law § 76-a [1] [a]).
“In order to state an anti-SLAPP counterclaim, a defendant must ‘identify . . . the application or permit being challenged or commented on,’ and his communications must have been ‘substantially related to such application or permit’ ” (Bridge Capital Corp. v Ernst at 496). Because the anti-SLAPP law is in derogation of common law, it must be narrowly construed (Hariri v Amper, 51 AD3d 146, 151 [1st Dept 2008] [“the antiSLAPP law is in derogation of the common law and must be strictly construed”]; Guerrero v Carva, 10 AD3d 105, 117 [2004], citing Harfenes v Sea Gate Assn., 167 Misc 2d at 652-653). Thus, defendant “must directly challenge a license or permit application in order to establish a cause of action under Civil Rights Law § 70-a” (Harfenes, 167 Misc 2d at 653).
Contrary to Silvercorp’s contention, the counterclaim sufficiently pleads that Silvercorp is a “public applicant or permit-tee” within the meaning of the anti-SLAPP law. A “public applicant or permittee” is defined in Civil Rights Law § 76-a (1) (b) as “any person who has applied for or obtained a permit . . . license, certificate or other entitlement for use or permission to act from any government body.” “Government body” is defined as “any municipality .... federal government, any public benefit corporation, or any public authority, board, or commission” (Civil Rights Law § 76-a [1] [d]).
“Uniformly, the New York courts have found that the persons properly alleged to be public applicants within the meaning of the anti-SLAPP statute were persons whose proposed actions required government permission” (Chandok v Klessig, 632 F3d 803, 819 [2d Cir 2011], citing Novosiadlyi v James, 70 AD3d 793, 793-794 [2d Dept 2010], where “building use permit was required,” Singh v Sukhram, 56 AD3d 187, 194 [2d Dept 2008], where “permission to operate an airline was required,” Matter of Related Props., Inc. v Town Bd. of Town/Vil. of Harrison, 22 AD3d 587, 588-589, 591 [2d Dept 2005], where “land use permit was required,” Duane Reade v Clark, 2 Misc 3d 1007[A], 2004 NY Slip Op 50174[U], *8 [Sup Ct, NY County 2004], where “ ‘permit process’ of the New York City Department of Buildings ‘was a prerequisite to the activity carried out by the plaintiff to which the defendant Clark was opposed,’ ” and Street Beat Sportswear v National Mobilization Against Sweatshops, 182 Misc 2d 447, 452 [Sup Ct, NY County 1999], where “ap *667 parel manufacturer 'c[ould] only operate its business with the permission of the Labor Commissioner’ ”). In order for Silver-corp to issue its securities on the New York Stock Exchange, it must have the approval of the SEC (Matter of Rochester Gas & Elec. Corp. v Maltbie, 190 Misc 308, 311 [Sup Ct, Albany County 1947] [before a public utility corporation can issue its securities, “it must have the approval of the (Public Service) ‘Commission’ and also that of the United States Securities and Exchange Commission”]).
The counterclaim alleges that Silvercorp applied for and received permission to act, i.e., issue shares of stock which are publically traded on the Toronto and New York Stock Exchanges, from the SEC and BCSC, and this allegation is sufficient to state that Silvercorp is a public applicant or permittee. It cannot be contested that Silvercorp cannot sell shares on the New York Stock Exchange without the proper permission from the SEC. Silvercorp is not simply an entity advocating a position to a town board, or an entity seeking governmental funding (cf. Hariri v Amper, 51 AD3d 146 [1st Dept 2008]; Chandok). Silvercorp must obtain permission from the SEC in order to issue shares on the New York Stock Exchange, and continues to be subject to its rules and regulations (see Adelphi Univ. v Committee to Save Adelphi, NYLJ, Feb. 6, 1997, at 33, col 2 [Sup Ct, Nassau County 1997]).
However, Anthion’s statements did not pose a direct challenge to any application for public offering of Silvercorp’s stock or impending application for same (Guerrero at 117 [“A narrow construction of the anti-SLAPP law requires that a SLAPP-suit defendant must directly challenge an application or permission in order to establish a cause of action under the Civil Rights Law” (emphasis added)]). There is no indication that Anthion’s attacks on Silvercorp in August and September 2011 were directly related to the filing, approval or continued approval of an offering of Silvercorp shares of stock. Indeed, it cannot be said that Anthion’s statements challenged any petition or application by Silvercorp given that no such petition or application was alleged to have been pending at the time the statements were made (see Guerrero, 10 AD3d at 117-118 [defendants failed to “identify any particular application or permit that plaintiffs have sought or received” or “cite any specific proceeding pending before an administrative agency in which they were advocating in opposition to the plaintiffs”]; Foley v CBS Broadcasting, Inc., 28 Misc 3d 1227[A], 2006 NY Slip Op *668 52712[U], *2 [2006] [reporting on proceedings by the New York City Consumer Affairs Department against plaintiff “did not oppose, or comment on, a pending application before the DCA,” and “therefore do not fall within the narrow construction given to the anti-SLAPP law”]; Harfenes, 167 Misc 2d at 652 [“plaintiffs were unaware of the Association’s application to the DEC at the time it was made, and never participated in the application process in any manner”]). And, while Anthion challenged the accuracy of Silvercorp’s financial disclosures, this type of challenge, in and of itself, fails to rise to the level of a challenge to Silvercorp’s permission for the issuance of its shares. Anthion’s complaints did not go directly to Silvercorp’s ability to maintain its permission to offer its shares publicly.
While one court declined to limit anti-SLAPP statute protection to statements made directly to a governmental body (see Duane Reade v Clark, 2 Misc 3d 1007[A], 2004 NY Slip Op 50174[U], *7 [2004] [applying protection to defendant’s “newspaper publicity campaign”]; see Adelphi Univ. v Committee to Save Adelphi), Anthion’s challenge to the financial statements of Silvercorp did not target any pending application to the SEC.
Thus, in the absence of any allegation that Anthion was “petitioning an agency regarding an application or permission” of Silvercorp, the court holds that Silvercorp’s action “did not affect defendants’] rights of public petition and participation before public agencies and, accordingly,” fails to state a claim under Civil Rights Law §§ 70-a and 76-a (see Guerrero at 118).
While “affidavits may be used freely to preserve inartfully pleaded, but potentially meritorious, claims” (Finkelstein Newman Ferrara LLP v Manning, 67 AD3d 538, 540 [1st Dept 2009], quoting Rovello v Orofino Realty Co., 40 NY2d 633, 635 [1976]), the affidavit submitted in opposition fails to rectify the deficiencies in the counterclaim.
Conclusion
Therefore, based on the foregoing, it is hereby ordered that the motion by Silvercorp Metals Inc. pursuant to CPLR 3211 (a) (7) to dismiss the counterclaim of defendant Anthion Management LLC is granted, and said counterclaim is hereby severed and dismissed; and it is further ordered that Silvercorp serve a copy of this order with notice of entry upon all parties within 20 days of entry.

. It is alleged that Anthion participated in and disseminated letters asserting defamatory and fraudulent statements about Silvercorp, dated August 29, 2011 and September 14, 2011, and Internet postings dated September 13, 14, and 19, 2011.
A “short sale” transaction proceeds as follows:
“The short seller identifies securities she believes will drop in market price, borrows these securities from a broker (prime brokers have the greatest market share), sells the borrowed securities on the open market, purchases replacement securities on the open market, and returns them to the broker — thereby closing the short seller’s position. The short seller’s profit (if any) is the difference between the market price at which she sold the borrowed securities and the market price at which she purchased the replacement securities, less borrowing fees, brokerage fees, interest, and any other charges levied by the broker” (Electronic Trading Group, LLC v Banc of Am,. Sec. LLC, 588 F3d 128, 132 [2d Cir 2009]).

. The August 29 report disclosed that the readers “should assume its authors hold a short position” in Silvercorp’s stock and would “stand[ ] to realize significant gains in the event the price of [Silvercorp’s] stock declines.” (It 27.)