[719 NYS2d 235]

Z.K. Jaszai et al., Respondents, v Christie's et al., Appellants.

First Department, January 16, 2001

## APPEARANCES OF COUNSEL

*John P. DeMaio* for respondent.

*Michael E. Salzman* of counsel (*Amera Z. Chowhan* on the brief; *Hughes Hubbard & Reed, L. L. P.,* attorneys), for appellants.

## OPINION OF THE COURT

WALLACH, J.

The main question before us on this appeal is whether the highlighted words in a four-paragraph facsimile transmission from defendant Findlay in New York City, on May 3, 1999, to a valued client of defendant Christie's, Ernst Beyeler, in Basel, Switzerland, sufficiently sustains a cause of action in defamation, or whether it encompasses constitutionally protected opinion:

> "In the meantime I had a visit from a gentleman called Mr. Z. K. Jaszai purporting to represent a client wishing to purchase *les Noces des Pierrettes* [*sic*] by Picasso. He would not name his client but as a credential produced a copy of a document purporting to be permission from you to allow him to purchase *Portrait of Dr. Gachet* by van Gogh on your behalf.
>
> "I have no reason to take this man seriously but would appreciate your candid and confidential opinion."

Trial Term denied defendants' motion to dismiss the complaint on the grounds that the highlighted words constituted a statement of fact defamatory to plaintiff Jaszai's professional status as an art dealer, or at the very least, a statement of opinion accompanied by facts defaming him. The motion court held that as a "mixed opinion" (i.e., one based upon purported facts that are unknown to the reader), the statement would be actionable here, in the context of commerce in the art world. We disagree, for the reasons that follow, and reverse, dismissing this first cause of action, and further dismissing the balance of the complaint based on tortious interference with contracts and business relationships, with leave to replead.

The complaint alleges that Jaszai met for two days in late April 1999 with Nicholas Maclean, a Christie's vice-president specializing in Modern Impressionist Art, for the purpose of acquiring, on behalf of an undisclosed principal, the Picasso

painting referenced in Findlay's fax. These discussions were inconclusive. Findlay, who was International Director of Christie's and Maclean's superior, attended neither meeting, and never personally met with Jaszai prior to the fax.

As a threshold matter, plaintiff Interquest Corporation has no claim for defamation here because there are no allegations tying it to the fax (*Chicherchia v Cleary*, 207 AD2d 855).

*Protected Opinion*

It is now beyond dispute that expressions of opinion are cloaked with the absolute privilege of speech protected by the First Amendment (*Gertz v Robert Welch, Inc.*, 418 US 323), and "false or not, libelous or not, are constitutionally protected and may not be the subject of private damage actions" (*Rinaldi v Holt, Rinehart & Winston*, 42 NY2d 369, 380, *cert denied* 434 US 969). *Steinhilber v Alphonse* (68 NY2d 283, 287), a case holding that a description of a woman as a "failure * * * lack-[ing in] * * * talent, ambition, and initiative" (far more derogatory than the statement at issue here) was a protected opinion, offered a four-part test (at 292) to distinguish opinion from fact. First, there must be an assessment as to whether the specific language in issue has a precise meaning that is readily understood, or whether it is indefinite and ambiguous. Second, there must be a determination as to whether the challenged statement can be objectively characterized as true or false. Third, the statement must be examined in the full context of the communication. And finally, the communication must be considered in its broader social context or setting to determine the existence of customs or conventions which might signal to readers or listeners that the challenged statement is purely one of opinion, and not fact.

When we place the statement complained of ("I have no reason to take this man seriously") alongside the four-part *Steinhilber* test, we are ineluctably led to the conclusion that it is pure opinion:

(1) Every person who takes himself seriously would like to be taken seriously by others. But whether this desired result has been fully achieved in any given instance must remain uncertain and ambiguous. Shakespeare wrote of "a sort of men"

> "With purpose to be dress'd in an opinion
> Of wisdom, gravity, profound conceit;
> As who should say, 'I am Sir Oracle,
> And, when I ope my lips, let no dog bark.'" (Merchant of Venice.)

Even were the canine audience to fall silent, the human recep-

tion of the Oracle could still range along a spectrum from reverential awe to hysterical derision, and a statement of a mildly negative view (e.g., that the Oracle should not be taken seriously) would be an opinion entitled to expression without incurring tort liability.

(2) For these reasons, the statement is not capable of being objectively characterized as true or false, and thus must be classified as protected opinion. Indeed, a close reading of the statement reveals an opinion not so much asserted about or against Jaszai, but rather reflective of the author's own uncertain state of mind. In this sense it can be read as a *disclaimer* of a firm opinion, accompanied by a solicitation for the addressee to provide the basis for a final opinion. But assuming, as do plaintiffs, that it suggests Jaszai is not to be "take[n] * * * seriously," the statement is completely vague, ambiguous and entirely in the eye of the beholder.

(3) Examination of "the full context" of the fax does nothing to impair the nature of the statement as an opinion. It is an informal communication made in the regular course of business, in which the opening paragraph mentions two totally irrelevant paintings by Gauguin and Braque, and the writer's intention to let the addressee know "if Christie's has a serious buyer." The fourth and final paragraph wishes the addressee's foundation success with a current new exhibition.

(4) Plaintiff Jaszai does place heavy reliance upon "the broader social context"—here, the entire international art world—to demonstrate that the statement is actionable. He submits five affidavits from personages of diverse rank and prominence in the field, three of whom were present at the relevant meetings at Christie's, and the other two averring that they had examined the full record of all the papers submitted on the motion before Trial Term. In varying forms, but strikingly similar language, these affidavits concur in the opinion that Jaszai, in the course of his dealings, was "highly professional," "courteous," and acted with "credibility." The two gentlemen whose knowledge of this case was limited to an examination of the record felt free to describe defendant Findlay's fax as "inaccurate and unprofessional," and offered the legal conclusion that Jaszai was "clearly defamed." The net impression is that these affiants have strong opinions favorable to plaintiff Jaszai's professional standing, and two of them volunteer a low opinion of defendant Findlay's professionalism. But all of this "proof" tends to prove just what plaintiffs should want to avoid, namely, that a trial of the issue would be noth-

ing more than a contest of competing opinions, rather than facts.

## The "Mixed Opinion" Rule Not Applicable

When an opinion implies the existence of undisclosed and defamatory facts (a so-called "mixed opinion"), it may be found defamatory (*see, e.g., Steinhilber v Alphonse, supra,* at 289). In such a case, the opinion itself may not be actionable, but what creates liability is the implication that the speaker "is privy to certain facts, unknown to his general audience, which are supportive of the opinion and detrimental to the person about whom the opinion is expressed" (*Rand v New York Times Co.,* 75 AD2d 417, 422). Moreover, for a mixed opinion to be actionable, the implied facts must themselves be a gross distortion or misrepresentation (*Steinhilber v Alphonse, supra,* at 290).

This exception to immunity from liability does not apply, however, to the subjective assessment of a person of the kind we have here. Otherwise, the narrow exception would swallow up the constitutional rule. In *Levittown Norse Assocs. v Day Realty Corp.* (150 AD2d 263, 264, *lv denied* 75 NY2d 703), a statement that a company was "very difficult to deal with" was held not to be actionable mixed opinion. Likewise, *Chalpin v Amordian Press* (128 AD2d 81, 84) rejected the claim that a statement that a music agent was "unbelievably unscrupulous" was actionable mixed opinion, because the statement was "the sort of subjective moral evaluation that readily falls within the ambit of what the average reader would understand to be the author's 'opinion' rather than fact."

## Innuendo

As a seemingly fall-back position, Jaszai suggests that the statement contains innuendo detrimental to him. But he overlooks the fundamental principle expressed in his cited authorities: "Innuendo may help to explain, but it cannot enlarge, the meaning of words." (*Gurtler v Union Parts Mfg. Co.,* 285 App Div 643, 645, *affd* 1 NY2d 5.) If a writing is not susceptible to libelous meaning, innuendo cannot make it so (*Tracy v Newsday, Inc.,* 5 NY2d 134, 136). To the same effect is *Gambuzza v Time, Inc.* (18 AD2d 351), where a story in *Life* Magazine involving the Russian master-spy, Rudolf Abel, contained a picture of a radio shop proprietor in Abel's neighborhood, with a caption referring to him as an admirer of the spy "for his electronic know-how." The plaintiff claimed that he was described, by innuendo, as " 'an admirer of a person engaged in activities looking toward the overthrow of the American form of government by force and violence' and that he

'may have knowingly assisted Rudolf Abel in his spying activities' " (*id.*, at 355). Suffice it to say that even in the depths of the Cold War, such an attempt to establish libel by innuendo was doomed to failure. Plaintiff Jaszai's imaginative effort, alleging that Findlay's statement impugned his professionalism, experience, knowledge and the skill necessary to close such an important deal, must necessarily fail.

In light of the foregoing, it is unnecessary to reach the issue of whether the statement was protected by a qualified privilege.

*Tortious Interference*

In the only other cause of action, plaintiffs reallege the 24 preceding paragraphs, and in two short supplemental paragraphs attempt to allege a cause of action for tortious interference with contractual relations. Obviously, there is heavy reliance upon the non-viable cause of action for libel. In this claim, plaintiffs allege the loss of several unspecified employments, including, by implication, their pre-existing commission from Beyeler to purchase the van Gogh painting for up to $90 million. On their face these claims do not contain the specificity required to state a cause of action, but as a matter of fairness we should grant plaintiffs an opportunity to replead.

Accordingly, the order of Supreme Court, New York County (Ira Gammerman, J.), entered January 25, 2000, which denied defendants' motion to dismiss the complaint for failure to state a cause of action, should be reversed, on the law, without costs, and the complaint dismissed, with leave to replead the tortious interference cause of action. The Clerk is directed to enter judgment accordingly.

NARDELLI, J. P., ELLERIN, LERNER and FRIEDMAN, JJ., concur.

Order, Supreme Court, New York County, entered January 25, 2000, reversed, on the law, without costs, and the complaint dismissed, with leave to replead the tortious interference cause of action.