[779 NYS2d 12]

WILLIAM GUERRERO et al., Appellants, v GEORGE CARVA et al., Respondents.

WILLIAM GUERRERO et al., Appellants-Respondents, v GEORGE CARVA et al., Respondents-Appellants.

First Department, June 17, 2004

---

**APPEARANCES OF COUNSEL**

*Law Offices of Michael A. Haskel*, Garden City (*Leonard Gekhman, Michael A. Haskel* and *Seanan L. Reidy* of counsel), for appellants and appellants-respondents.

*Leslie Salzman, Cardozo Bet Tzedek Legal Services*, New York City (*Sara Hiltzik* and *Sunny Jung* of counsel), for respondents and respondents-appellants.

## OPINION OF THE COURT

Gonzales, J.

The two issues to be decided on this appeal are whether Supreme Court properly dismissed plaintiffs' defamation causes of action on the ground that the statements contained in certain flyers distributed by defendants constituted merely hyperbolic expressions of opinion that are not actionable, and whether the use of the individual plaintiff's photograph in one of the flyers violated his right to privacy under the Civil Rights Law. In addition, defendants' cross appeal requires us to determine whether plaintiffs' action constitutes an impermissible Strategic Lawsuit Against Public Participation (SLAPP suit), designed to chill defendants' rights of public petition.

We hold that because the issue of whether plaintiff Guerrero is a public figure, or limited public figure, for purposes of the law of defamation was never fully addressed before the motion court, a remand is necessary to make such a determination and to decide, if Guerrero has acquired such status, whether plaintiffs can make a clear and convincing showing that the alleged defamatory statements were published with actual malice. In addition, we conclude that plaintiffs' action is not a SLAPP suit within the meaning of Civil Rights Law §§ 70-a and 76-a. However, we affirm Supreme Court's dismissal of plaintiff's breach of privacy cause of action since Guerrero's photograph was not used for advertising or trade purposes. Accordingly, the appealed orders of the Supreme Court are modified to the extent indicated herein.

Plaintiff William Guerrero is the general managing partner of CDC 111th Street Realty, LP (CDC), which owns numerous residential and commercial properties in East Harlem. He is also the president of City Property Management and Development, Inc. (CPM), which acts as the managing agent for all of the properties owned by CDC. CPM and CDC are also plaintiffs in the instant action. Many of the properties owned and managed by plaintiffs are subject to management contracts with, and receive subsidies from, public housing agencies such as the New York City Department of Housing Preservation and Development (HPD).

From June 1999 until February 28, 2001, defendant George Carva was a commercial tenant of 239 East 111th Street, one of

the East Harlem buildings owned and managed by plaintiffs. Defendant Fernando Torres is a residential tenant of 2014 Third Avenue, another building controlled by plaintiffs.

The instant action arose out of defendants' actions in drafting and distributing in the East Harlem community certain flyers making highly inflammatory, and allegedly false, accusations against Guerrero concerning his management of buildings in the area. According to Carva, his purpose in distributing the flyers was to alert the East Harlem community and various public officials and agencies to Guerrero's mismanagement of publicly subsidized housing, and to rally opposition to any future applications by Guerrero for public subsidies or contracts. Plaintiffs suggest a different, more personal motivation, noting that distribution of the flyers commenced on January 3, 2001, shortly before Carva was lawfully evicted from his apartment by plaintiffs for nonpayment of rent.

The first flyer, titled "WARNING!", urged tenants of the 24 buildings listed on the flyer that it was "important to unite and form a Tenants' Association to stop [Guerrero's] abuses and illegal evictions!" It further alleged that CPM "is run by an egocentric 'House Latino' who is funded by White South Afrikaneer's money & the Giuliani Administration."

The second flyer, similarly titled "WARNING!!", included the following statements:

> "Be aware that Willie Guerrero, [CDC and CPM are] receiving 11 more buildings. He is unfit to manage any more buildings. He has tried to evict over 20 families in East Harlem including single parents, Latinos, African Americans and he claims he is going to teach the S&N's how to behave like responsible whites. He also claims to have Councilman Phillip Reed in his pocket (We know that's not true)
>
> . . .
>
> "11 more tenements will give this character close to 40 tenements, all in East Harlem (EL BARRIO) this ABUSIVE GUN CARRYING, JERSEYITE ANTI-UNION has got to be stopped . . . CALL FOR FACTS . . . On how he treats the Puerto Rican/Latinas Employees and how he fires them. Over thirty in two years [listing 18 first names] . . . And what is he always saying about AFRICAN AMERICANS."

The second flyer also listed the name and telephone numbers of

several local politicians and agency heads, and concluded with Carva's signature and statement: "For more information call George Carva at (212) 860-4300 for more opinion."

The third flyer, entitled "DANGER!", reiterated many of the same accusations and included a photograph of Guerrero. In addition, the flyer warned tenants of the buildings owned by plaintiffs that "it's important to unite and form a Tenants Association to stop his abuses and illegal evictions with his lawyers . . ." As with the earlier two flyers, these flyers were posted on plaintiffs' properties, distributed to tenants and sent to public officials, including city and state legislators, officials at HPD and the chairman of the local community board.

On or about January 3, 2001, Carva allegedly told a reporter for the newspaper El Diario, in Guerrero's presence, that Guerrero was a racist, that he illegally evicted tenants and discriminated against Latino and African-American tenants based on racial prejudice and that he engaged in unlawful conduct in connection with his management of buildings.

Plaintiffs commenced the instant action on or about March 9, 2001, seeking to recover damages for libel arising from the publication of the three defamatory flyers (first, second and third causes of action), breach of privacy in violation of Civil Rights Law § 50 for the unauthorized use of Guerrero's photograph (fourth cause of action), slander by Carva based on the false and defamatory statements made to the El Diario reporter (fifth cause of action), trespass and property damage by Carva (sixth cause of action) and injunctive relief directing defendants to cease distributing the flyers and interfering with plaintiffs' property and business rights with others (seventh and eight causes of action). Defendants, acting pro se, submitted an answer denying the allegations, and asserting the affirmative defenses that the statements in the flyers were true and that the public had the right to know the information contained therein because Guerrero was a public figure.

On May 7, 2001, after a hearing, Supreme Court granted plaintiffs' motion for a preliminary injunction. The injunction enjoined and restrained defendants "from harassing the plaintiffs, interfering with plaintiffs' property rights, interfering with plaintiffs' contractual relationship with the City of New York, interfering with the plaintiffs' contractual relationship with tenants, employees and vendors, trespassing upon plaintiffs' property and publishing or distributing any notices defaming the plaintiffs."

Plaintiffs then moved for summary judgment and for an inquest. Defendants opposed the motion and cross-moved for an order requiring plaintiffs to answer and to comply fully with defendants' demands for documents and a bill of particulars. In the April 17, 2002 order being appealed, Supreme Court dismissed plaintiffs' first, second, third and fifth causes of action alleging defamation, finding that the defendants' statements constituted expressions of opinion protected by the First Amendment that " 'would be understood by the ordinary listener for what [they are]: a tasteless effort to lampoon plaintiff[s]' for the manner in which they managed certain buildings in the defendants' community." The court did, however, grant plaintiffs' motion for summary judgment on the fourth and sixth causes of action for breach of privacy under Civil Rights Law § 50 and trespass/property damage, respectively, finding that plaintiffs had demonstrated entitlement to judgment as a matter of law on both causes of action. The court also found that plaintiffs' complaint was not a SLAPP suit subject to Civil Rights Law § 76-a (1) (a).

With respect to permanent injunctive relief, the court granted summary judgment on the seventh and eighth causes of action for injunctive relief to the extent of enjoining defendants from each of the activities mentioned in the court's preliminary injunction, except that the provision enjoining defendants from "publishing or distributing any notices defaming plaintiffs" was deleted.

In December 2002 defendants obtained counsel, who moved on their behalf: (1) to renew their opposition to plaintiffs' summary judgment motion; (2) to vacate the court's April 17, 2002 order to the extent it granted plaintiffs summary judgment on their fourth, sixth, seventh and eighth causes of action; and (3) to dismiss plaintiffs' entire complaint and vacate all injunctions on the ground that the complaint constituted a groundless SLAPP suit, and for damages and attorneys' fees under Civil Rights Law §§ 70-a and 76-a.

In the May 23, 2003 order being appealed, the court granted defendants' motion for renewal and considered their arguments on the merits. The court rejected defendants' argument that this was a SLAPP suit, finding instead that "the instant action, which seeks damages based on trespass and property damages resulting from criminal mischief and to prevent a pattern of harassment, was not, as defendants argue, 'materially related' to defendants' efforts to report on, comment on, rule on, chal-

lenge or oppose plaintiffs' applications, as required by Civil Rights Law § 76-a (1) (a).''

However, the court did vacate those portions of its previous April 17 order which granted plaintiffs summary judgment on the fourth cause of action for breach of privacy and on the sixth cause of action relating to property damage resulting from a hole in the wall of Carva's apartment. The court found that dismissal of the breach of privacy claim was required since Guerrero's photograph was not used for purposes of advertising or trade and that an issue of fact existed as to whether the hole in the wall was approved by plaintiffs or their agents. The court also declined to vacate the injunctive relief granted.

■ Plaintiffs' first argument on appeal is that their libel claims should be reinstated since a reasonable reader would consider many of the statements in the flyers published by defendants to be assertions of fact, as opposed to constitutionally protected opinion. Plaintiffs further argue that the requirement of actual malice was not applicable to Guerrero's libel claims since he is not a limited public figure. We agree with the first argument, but conclude that the issue of Guerrero's status as a public figure requires a remand for further consideration.*

''The essence of the tort of libel is the publication of a statement about an individual that is both false and defamatory'' (*Brian v Richardson*, 87 NY2d 46, 50-51 [1995]). Since falsity is a necessary element of a libel claim, and only ''facts'' are capable of being proven false, it follows that ''a libel action cannot be maintained unless it is premised on published assertions of fact'' (*Brian v Richardson*, 87 NY2d at 51).

Conversely, expressions of opinion are cloaked with the privilege of speech afforded by the First Amendment (*Jaszai v Christie's*, 279 AD2d 186, 188 [2001], citing *Gertz v Robert Welch, Inc.*, 418 US 323 [1974]), and ''false or not, libelous or not, are constitutionally protected and may not be the subject of private damage actions'' (*Rinaldi v Holt, Rinehart & Winston*, 42 NY2d 369, 380 [1977], *cert denied* 434 US 969 [1977]).

Distinguishing between protected expressions of opinion and actionable assertions of fact has proven to be a challenging task for the courts. In the past, the Court of Appeals has cited three factors that should be considered: (1) whether the specific language in issue has a precise meaning which is readily

---

* Plaintiffs have offered no arguments on appeal for reinstatement of their slander claim. Therefore, we do not address it.

understood; (2) whether the statements are capable of being proven true or false; (3) whether either the full context of the communication in which the statement appears or the broader social context and surrounding circumstances are such as to "signal . . . readers or listeners that what is being read or heard is likely to be opinion, not fact" (*Brian v Richardson*, 87 NY2d at 51, quoting *Gross v New York Times Co.*, 82 NY2d 146, 153 [1993]; *see also Ollman v Evans*, 750 F2d 970, 983 [1984], *cert denied* 471 US 1127 [1985]; *Steinhilber v Alphonse*, 68 NY2d 283, 292 [1986]).

The Court has cautioned, however, that "sifting through a communication for the purpose of isolating and identifying assertions of fact" should not be the central inquiry (*Brian v Richardson*, 87 NY2d at 51). Instead, courts "should look to the over-all context in which the assertions were made and determine on that basis 'whether the reasonable reader would have believed that the challenged statements were conveying facts about the libel plaintiff' " (*id.*, quoting *Immuno AG. v Moor-Jankowski*, 77 NY2d 235, 254 [1991], *cert denied* 500 US 954 [1991]).

One final principle that bears relevance to this case is that even in cases where a statement falls within the protective shield of expressions of opinion, such opinions will lose their protection and become actionable where the "statement of opinion implies that it is based upon facts which justify the opinion but are unknown to those reading or hearing it" (*Steinhilber v Alphonse*, 68 NY2d at 289, citing *Hotchner v Castillo-Puche*, 551 F2d 910, 913 [2d Cir 1977], *cert denied sub nom. Hotchner v Doubleday & Co., Inc.*, 434 US 834 [1977]). These are known as "mixed opinion[s]" (*Steinhilber v Alphonse*, 68 NY2d at 290), and are actionable not because of the false opinion itself, but rather because of "the implication that the speaker knows certain facts, unknown to his audience, which support his opinion and are detrimental to the person about whom he is speaking" (*id.*, citing *Rand v New York Times Co.*, 75 AD2d 417, 422 [1980]).

Applying these standards to the present case, we conclude that Supreme Court erred in dismissing the libel claims since many of the statements in the flyers "would be understood by the reasonable reader as assertions of fact" (*Gross v New York Times Co.*, 82 NY2d at 154). Plaintiffs identify numerous alleged assertions of fact, but we focus on only three: (1) the allegation in the second flyer that plaintiff is "unfit to manage any

more buildings"; (2) the allegation in the first and third flyers that plaintiffs engaged in "illegal evictions" against tenants; and (3) the allegation in the second flyer of racial discrimination against employees and racist remarks ("how he treats the Puerto Rican/Latinas Employees and how he fires them" [listing the first names of 18 employees fired] and "what is he always saying about AFRICAN AMERICANS").

Each of the above statements is reasonably susceptible of a defamatory meaning because they all tend to disparage Guerrero in his profession as a property manager (see Giffuni v Feingold, 299 AD2d 265 [2002]; Scott v Cooper, 226 AD2d 360 [1996]). While the allegation that he is "unfit" standing alone might be too vague to constitute an assertion of fact (Amodei v New York State Chiropractic Assn., 160 AD2d 279 [1990], affd 77 NY2d 891 [1991]), when combined with assertions of specific instances of "illegal evictions" and racial discrimination in employment, each of the statements becomes precise in meaning and capable of being proven true or false.

In addition, both the immediate and broader contexts of these statements would reasonably suggest to any reader that defendants were personally aware of facts demonstrating the occurrence of "illegal evictions" and the termination of employees based on race or ethnicity. The immediate context of the statements reveals the disclosure of some specifics as to the victims of the illegal evictions and employment discrimination, such as the references to "20 families in East Harlem including single parents, Latinos [and] African Americans" that Guerrero has tried to evict, and the listing of 18 names of Puerto Rican or Latino employees who had been fired by plaintiffs (cf. 600 W. 115th St. Corp. v Von Gutfeld, 80 NY2d 130, 143 [1992], cert denied 508 US 910 [1993] [loose, figurative statements concerning "bribery" and "corruption" were devoid of specific references to actors or transactions and constituted protected opinion]). Defendants' inclusion of the names or groups of victims of Guerrero's discrimination and illegal conduct would signal any reasonable reader that assertions of fact were being conveyed, not merely Carva's opinion.

The broader context of the statements—the distribution of printed flyers by two disgruntled tenants accusing their landlord of specific acts of misconduct as well as general incompetence as a landlord, to the landlord's tenants, public officials and the community at large—seems clearly designed to impress the reader that defendants are conveying concrete evidence of

plaintiffs' misconduct. Although the flyers certainly are not short on loose, figurative language, we note that this was not a situation like a trade union dispute (*see Steinhilber v Alphonse*, 68 NY2d 283 [1986]) or public hearing (*see 600 W. 115th St. Corp. v Von Gutfeld*, 80 NY2d 130 [1992]), where vituperative and ill-conceived comments are generally expected due to the heated nature of disputes common to those arenas. Although defendants attempt to portray the instant situation as "a time of intense controversy about the purchase and management of city owned buildings in East Harlem," their failure to include even a single affidavit of a noninterested person supporting the allegations against plaintiffs suggests that the "intense controversy" is highly personal, and, more than likely, limited solely to the defendants.

Moreover, insofar as the subject assertions would lead a reasonable reader to believe that facts, not opinions, were being conveyed, the inclusion of an allegation of "illegal" or criminal wrongdoing (*see Gross v New York Times Co.*, 82 NY2d at 155-156 [assertion in newspaper series that plaintiff engaged in "corrupt" conduct as Chief Medical Examiner cannot be treated as a mere rhetorical flourish or speculative accusation of an angry but ill-informed citizen made during a heated debate]), and racial discrimination in the performance of his professional duties (*Scott v Cooper*, 226 AD2d at 360-361), only enhances their defamatory nature.

Nor can defendants' statements be shielded by the opinion privilege in these circumstances, since they " 'imply the existence of undisclosed underlying facts' that would support defendant's opinion and would be detrimental to plaintiffs" (*Giffuni v Feingold*, 299 AD2d at 266, quoting *Gross v New York Times Co.*, 82 NY2d at 153). Each of the flyers distributed by defendants in this case did far more than imply undisclosed facts; they directly invited the reader to call for more information. Although in the second flyer the invitation is couched in terms of an opinion ("For more information call George Carva at (212) 860-4300 *for more opinion*" [emphasis added]), three paragraphs above, in the same flyer, the words clearly imply undisclosed facts ("CALL FOR FACTS") (*see Gross v New York Times Co.*, 82 NY2d at 154 [charges of criminal wrongdoing, although couched in terms of hypothesis, actually would be understood by reader as assertions of fact]). Thus, the alleged defamatory statements in each flyer fall directly within the "mixed-opinion" rule, and are actionable (*see Giffuni v Feingold*, 299 AD2d at 266).

That does not end the matter, however. Defendants have raised the argument, not addressed by the motion court, that even if the statements are susceptible of defamatory meaning, the libel claims must still be dismissed because plaintiffs have not shown that defendants acted with actual malice. In a defamation action against a public figure, a plaintiff has the burden of showing actual malice by clear and convincing evidence (*Freeman v Johnston*, 84 NY2d 52, 56 [1994], *cert denied* 513 US 1016 [1994]; *see also New York Times Co. v Sullivan*, 376 US 254, 279-280 [1964]; *Mahoney v Adirondack Publ. Co.*, 71 NY2d 31, 39 [1987]). For purposes of the law of defamation, a statement is made with actual malice when it is made "with knowledge that it was false or with reckless disregard of whether it was false or not" (*New York Times Co. v Sullivan*, 376 US 254, 280 [1964]; *Prozeralik v Capital Cities Communications*, 82 NY2d 466, 474 [1993]). The actual malice standard has also been applied to "limited public figures," or those persons who have voluntarily injected themselves or are drawn into a particular public controversy and thereby become public figures for a limited range of issues (*see Gertz v Robert Welch, Inc.*, 418 US 323, 351 [1974]).

Although, contrary to plaintiffs' argument, defendants did raise the issue of Guerrero's status as a public figure in proceedings before the motion court, the arguments on the subject were extremely limited, and the parties and the motion court focused their analysis almost exclusively on the issue of whether the statements were defamatory in the first place. Since the court did not decide the issue and the record is insufficient to rule on the matter, we remand to Supreme Court for a determination, after additional submissions by the parties, as to whether Guerrero is a public figure or limited public figure, and if so, whether plaintiffs have met their burden of showing actual malice, followed thereafter by a disposition of defendants' motion for summary dismissal of the libel claims.

■ Plaintiff Guerrero next argues that Supreme Court erroneously dismissed his breach of privacy claim upon the ground that defendants' unauthorized use of his photograph was not for advertising or trade purposes. Sections 50 and 51 of the Civil Rights Law prohibit the use of a person's "name, portrait, picture or voice" for advertising or trade purposes without that person's written consent. The Court of Appeals has instructed that Civil Rights Law §§ 50 and 51 are "to be narrowly construed and 'strictly limited to nonconsensual commercial ap-

propriations of the name, portrait or picture of a living person' " (*Messenger v Gruner + Jahr Printing & Publ.*, 94 NY2d 436, 441 [2000]).

Under Court of Appeals precedent, a name, portrait or picture is used for advertising purposes "if it appears in a publication which, taken in its entirety, was distributed for use in, or as part of, an advertisement or solicitation for patronage of a particular product or service" (*Beverley v Choices Women's Med. Ctr., Inc.*, 78 NY2d 745, 751 [1991]). Contrary to plaintiffs' argument, the use of the photographs as a means of encouraging others to join a tenants' association was not, as a matter of law, a use for advertising purposes as contemplated by the statute. Accordingly, this claim was properly dismissed by Supreme Court on renewal.

With regard to defendants' cross appeal, their primary contention is that the motion court erred in declining to dismiss plaintiffs' complaint as an improper SLAPP suit. Defendants argue that this action falls within the statutory definition of a SLAPP suit because it was an action for damages brought by a "public applicant or permittee" (plaintiffs) that was "materially related" to defendants' efforts to comment on or oppose plaintiffs' applications or contracts for the management of city-subsidized properties in East Harlem (*see* Civil Rights Law § 76-a [1] [a]; CPLR 3212 [h]). We disagree.

Civil Rights Law § 76-a (1) (a) defines an "action involving public petition and participation" as an "action . . . for damages that is brought by a public applicant or permittee, and is materially related to any efforts of the defendant to report on, comment on, rule on, challenge or oppose such application or permission." The anti-SLAPP provisions of Civil Rights Law §§ 70-a and 76-a were enacted in 1992 to protect citizen activists from lawsuits commenced by well-financed public permit holders in retaliation for their public advocacy (*see Harfenes v Sea Gate Assn.*, 167 Misc 2d 647, 648 [Sup Ct, NY County 1995]).

A finding that an action is a SLAPP suit entails serious consequences to the plaintiff: a heightened standard of proof is imposed upon the plaintiff to avoid dismissal of the action (CPLR 3212 [h]); where the action is one for defamation, an actual malice standard is imposed (Civil Rights Law § 76-a [2]); and defendants in SLAPP suits are given a statutory right of action to recover damages, including costs and attorneys' fees, if the action is "without a substantial basis in fact and law" and could not be supported by an argument for a change in the law (*see* Civil Rights Law § 70-a [1] [a]).

Preliminarily, we note that plaintiffs do not challenge that they fall within the definition of "public applicant or permittee." Therefore, the only remaining issue to be addressed is whether the motion court correctly ruled that plaintiffs' action was not "materially related" to defendants' efforts to comment on or oppose plaintiffs' applications.

Although a limited number of statements in defendants' flyers might be understood to bear some relation to plaintiffs' management practices as a public permittee landlord, we agree with Supreme Court that plaintiffs' causes of action were not "materially related" to defendants' efforts to comment on or oppose plaintiffs' applications or permission, within the meaning of the statute (see Long Is. Assn. for AIDS Care v Greene, 269 AD2d 430, 430-431 [2000]). As one court has noted, because the anti-SLAPP law is in derogation of common law, it must be narrowly construed (Harfenes v Sea Gate Assn., 167 Misc 2d at 652-653). A narrow construction of the anti-SLAPP law requires that a SLAPP-suit defendant must directly challenge an application or permission in order to establish a cause of action under the Civil Rights Law (id.). Defendants' flyers do not meet this narrow construction.

As plaintiffs correctly note, defendants' flyers do not identify any particular application or permit that plaintiffs have sought or received. Nor do they cite any specific proceeding pending before an administrative agency in which they were advocating in opposition to the plaintiffs. Although the flyers were sent to HPD and the Division of Housing and Community Renewal, agencies presumably empowered to revoke plaintiffs' contracts or permits, defendants make no specific demand in the flyers that these agencies undertake such action, or even investigate plaintiffs' alleged misconduct. Instead, the clear gist of the flyers is to cause embarrassment or injury to plaintiffs' reputation by a public airing of the allegations of misconduct.

At a minimum, the anti-SLAPP statute should be read to require that a defendant identify, at least in general terms, the application or permit being challenged or commented on, and that the defendant's communications be substantially related to such application or permit. Here, defendants' brief allusion to plaintiffs' status as a manager and landlord of East Harlem properties, together with the implication that plaintiffs are "receiving" these properties pursuant to a public grant, is clearly insufficient to meet this standard. Requiring a close nexus between defendants' advocacy efforts and plaintiffs' ap-

plication or permit furthers the statute's underlying purpose of protecting all citizens' right of public petition, while simultaneously preventing such right from being abused in a context far removed from any traditional mode of public petition.

Accordingly, in the absence of evidence that defendants were petitioning an agency regarding an application or permission of plaintiffs, we must conclude that plaintiffs' action "did not affect defendant[s'] rights of public petition and participation before public agencies and, accordingly, did not offend Civil Rights Law §§ 70-a and 76-a" (*Bell v Little*, 250 AD2d 485 [1998]; *Harfenes v Sea Gate Assn.*, 167 Misc 2d at 650-651).

The portion of defendants' cross appeal seeking reversal of the permanent injunction has been affected by subsequent events. On February 6, 2004, Supreme Court granted defendants' motion for clarification/modification of the scope of the permanent injunction, originally issued in the court's April 17, 2002 order. The court ruled that the portion of the injunction prohibiting defendants from " 'harassing' the plaintiffs and from 'interfering' with plaintiffs' property rights, and contractual relationships with the City of New York and with tenants, employees and vendors" was too vague to be enforceable by contempt and infringed on defendants' First Amendment rights. The court also found that the portion of the injunction relating to trespass and vandalism was improper since plaintiffs had a remedy at law, namely money damages, which in fact were awarded to plaintiffs after conclusion of the trial on the sixth cause of action in December 2003. Thus, the court vacated the entire injunction after the appeal and cross appeal from the underlying orders had already been perfected.

In light of this new ruling, defendants sought to withdraw the portion of their cross appeal relating to the injunction, but plaintiffs refused to consent. Defendants withdrew it anyway. As a result, plaintiffs then moved for a stay of the motion court's February 6, 2004 clarification order, arguing that Supreme Court had no jurisdiction to hear an issue that was already the subject of a pending appeal.

We conclude that new circumstances which have arisen subsequent to Supreme Court's issuance of the injunction in April 2002 require new consideration of the issue of the scope of injunctive relief in this matter. As indicated above, we have reinstated the libel causes of action and remanded for a hearing on Guerrero's status as a public figure. Since the libel claims are not dismissed, injunctive relief may eventually be appropri-

ate with respect to the distribution of flyers. In addition, the sixth cause of action was severed and tried, resulting in $750 damages being awarded to plaintiff. This award resolves the property damage issue and there is no indication in the record of any further need for injunctive relief on that cause of action. In short, the facts underlying the court's injunction have substantially changed since it was issued, and for this reason we vacate the injunction and remand for further consideration.

Accordingly, the orders of the Supreme Court, New York County (Barbara R. Kapnick, J.), entered April 17, 2002 and May 23, 2003, the latter upon a grant of renewal, which (1) granted plaintiffs' motion for summary judgment, in part, on their sixth cause of action for property damage, (2) dismissed plaintiffs' first, second, third and fifth causes of action seeking damages for libel and slander, (3) dismissed plaintiff's fourth cause of action for breach of privacy in violation of Civil Rights Law §§ 50 and 51, (4) denied defendants' motion to dismiss the complaint upon the ground that it is an improper SLAPP suit, and denied their request for damages and attorneys' fees pursuant to Civil Rights Law §§ 70-a and 76-a, and (5) denied defendants' motion to vacate the injunctive relief, should be modified, on the law, the first, second and third causes of action for libel reinstated, the injunctive relief vacated, and the matter remanded for determinations as to whether plaintiff Guerrero is a limited public figure for purposes of the libel causes of action and for disposition of the same, and for a new determination on the question of injunctive relief based upon the opinion and order herein, and otherwise affirmed, without costs.

Motion seeking stay denied as moot.

NARDELLI, J.P., MAZZARELLI and SAXE, JJ., concur.

Orders, Supreme Court, New York County, entered April 17, 2002 and May 23, 2003, modified, on the law, the first, second and third causes of action for libel reinstated, the injunctive relief vacated, and the matter remanded for determinations as to whether plaintiff Guerrero is a limited public figure for purposes of the libel causes of action and for disposition of the same, and for a new determination on the question of injunctive relief based upon the opinion and order herein, and otherwise affirmed, without costs. Motion seeking stay denied as moot.