[854 NYS2d 126]

RONALD D. HARIRI, Respondent, v RICHARD AMPER et al., Appellants.

First Department, March 25, 2008

## APPEARANCES OF COUNSEL

*Johannesen & Johannesen, P.L.L.C.*, Rocky Point (*Richard Johannesen* and *AnnMarie R. Johannesen* of counsel), for appellants.

*Ronald D. Hariri*, New York City, respondent pro se.

## OPINION OF THE COURT

NARDELLI, J.

In this appeal, we are asked to determine whether the motion court properly employed a narrow interpretation of Civil Rights Law §§ 70-a and 76-a in dismissing defendants' counterclaim, which sought attorney's fees and compensatory and punitive damages on the basis that plaintiff's complaint constituted an improper strategic lawsuit against public participation (SLAPP suit).

Plaintiff Ronald D. Hariri, an attorney acting pro se herein, entered into negotiations in March 2004 to purchase property within Enterprise Park at Calverton (EPCAL), which is located in Riverhead, New York. Plaintiff planned to use the property, formerly Grumman airfield, for the purpose of storing and using one or more business jet aircraft for personal and possible time share use. The Town of Riverhead, at that time, was in the process of developing a new master plan for land use at the EPCAL site, which included the amendment or enactment of zoning regulations. Plaintiff, in view of the foregoing, undertook an active lobbying campaign to persuade town officials to enact a zoning code that would permit his desired use, which efforts were aggressively opposed by defendant Long Island Pine Barrens Society (the Society),* an allegedly nonpartisan, not-for-profit environmental, educational and advocacy group, and defendant Richard Amper, its executive director. Plaintiff's proposed project never came to fruition, however, because on December 28, 2004, the Riverhead Town Board adopted zoning codes for EPCAL that banned the storage of aircraft as a stand-alone use.

Plaintiff subsequently commenced the within action in February 2005 and interposed two causes of action, both of which

---

* The Society states that it was formed in 1977 "to protect drinking water and preserve open space in Long Island's most environmentally sensitive areas" and claims to have "played the lead role in the preservation of the Long Island Pine Barrens, the island's premier ecosystem."

sound in defamation. The complaint asserts that defendants, in fighting plaintiff's lobbying efforts, falsely accused him of, inter alia, improper relationships with public officials, shameless, un-American and improper lobbying, muzzling free speech, and causing a third party to make criminal death threats against Amper. Defendants answered the complaint and interposed one counterclaim, which asserted that plaintiff's complaint was commenced by a "public applicant or permittee" in retaliation for defendants' public advocacy and, therefore, was an improper SLAPP suit under the Civil Rights Law.

Plaintiff moved for summary judgment dismissing the counterclaim, alleging that he is not a public applicant or permittee within the meaning of Civil Rights Law § 76-a (1) (b); that the alleged defamatory statements were not materially related to any effort on the part of defendants to comment on or oppose any application or permit; and that the complaint had a good faith basis in law and fact. Defendants opposed the motion, asserting, among other things, that plaintiff "systematic[ally] and formal[ly] petition[ed] for increased aviation use at the EPCAL," and "applied to the Town Board of the Town of Riverhead . . . for new zoning to permit increased aviation uses." Defendants contend that as a result of plaintiff's activities, he falls within the definition of "public applicant or permittee."

The motion court, in a decision and order dated May 31, 2006, strictly construed the statute and granted plaintiff's motion on the ground that he is not an applicant or permittee within the meaning of the Civil Rights Law. Defendants appeal and we now affirm.

The New York State Legislature, in 1992, enacted Civil Rights Law §§ 70-a and 76-a to provide heightened protections for defendants in actions which involve "public petition or participation," often referred to as SLAPP suits. Shortly after the SLAPP legislation was enacted, the Court of Appeals, in *600 W. 115th St. Corp. v Von Gutfeld* (80 NY2d 130, 137 n 1 [1992], *cert denied* 508 US 910 [1993]), commented:

> "In recent years, there has been a rising concern about the use of civil litigation, primarily defamation suits, to intimidate or silence those who speak out at public meetings against proposed land use development and other activities requiring approval of public boards. Termed SLAPP suits—strategic lawsuits against public participation—such actions

are characterized as having little legal merit but are filed nonetheless to burden opponents with legal defense costs and the threat of liability and to discourage those who might wish to speak out in the future (*see, e.g., Westfield Partners v Hogan*, 740 F Supp 523; Pring and Canan, *Strategic Lawsuits Against Political Participation*, 35 Soc Probs 506). In response, New York State enacted a law specifically aimed at broadening the protection of citizens facing litigation arising from their public petition and participation."

The Legislature, in the introductory section of the new law, which was entitled "Legislative findings and purpose," stated:

"The legislature hereby declares it to be the policy of the state that the rights of citizens to participate freely in the public process must be safeguarded with great diligence. The laws of the state must provide the utmost protection for the free exercise of speech, petition and association rights, particularly where such rights are exercised in a public forum with respect to issues of public concern.

"The legislature further finds that the threat of personal damages and litigation costs can be and has been used as a means of harassing, intimidating or punishing individuals, unincorporated associations, not-for-profit corporations and others who have involved themselves in public affairs." (L 1992 ch 767, § 1; *see also* Long, *SLAPPing Around the First Amendment: An Analysis of Oklahoma's Anti-SLAPP Statute and its Implications on the Right to Petition*, 60 Okla L Rev 419, 420-421 [2007] ["(T)he primary objective of SLAPP suits is not to win. Instead of achieving victory in court, SLAPP suits are designed to intimidate the petitioners into dropping their initial petitions due to the expense and fear of extended litigation . . . (T)he primary motivation behind filing SLAPP suits is to retaliate against successful opposition and prevent future opposition"]; Johnson, *Regulating Lobbyists: Law, Ethics, and Public Policy*, 16 Cornell JL & Pub Pol'y 1, 7-8 [2006] ["Anti-SLAPP statutes make it easier for courts to dismiss defamation suits and other retaliatory claims filed against persons who speak out

on public issues. America's commitment to the open debate of public issues logically extends beyond discussions among the citizenry to include communications between citizens and public officials or employees. The interests of democracy cannot be served by requiring those who petition the government to do so with trepidation or excessive caution . . . The right to petition, along with the related rights of association, speech, and press, must be interpreted in a manner that invites vigorous, and sometimes controversial, discussion of public affairs" (footnotes omitted)].)

Civil Rights Law § 76-a (1) (a) defines an action involving public petition and participation as "an action, claim, cross claim or counterclaim for damages that is brought by a *public applicant or permittee*, and is materially related to any efforts of the defendant to report on, comment on, rule on, challenge or oppose such application or permission" (emphasis added). A "public applicant or permittee," the definition of which is at the heart of this matter, "shall mean any person who has applied for or obtained a permit, zoning change, lease, license, certificate or other entitlement for use or permission to act from any government body, or any person with an interest, connection or affiliation with such person that is materially related to such application or permission" (§ 76-a [1] [b]). Civil Rights Law § 70-a provides that a defendant in a SLAPP suit may recover costs and attorney's fees, as well as compensatory and punitive damages, if certain delineated showings are made (*see* Civil Rights Law § 70-a [1] [a], [b], [c]).

Consequently, we find that this legislation creates a new right of action for victims of SLAPP suits, and places additional restrictions on the ability of public applicants to seek redress from the courts. Indeed, the Legislature, at the same time that the amendments to the Civil Rights Law were passed, also amended New York's Civil Practice Law and Rules in order to impose upon plaintiffs, in actions involving public petition and participation, a heightened standard of proof to avoid dismissal of the action (*Guerrero v Carva*, 10 AD3d 105, 116 [2004]). CPLR 3212 (h) provides that a motion for summary judgment to dismiss a SLAPP suit shall be granted unless the responding party demonstrates its action, claim or cross claim "has a substantial basis in fact and law or is supported by a substantial argument for an extension, modification or reversal of existing

law." CPLR 3211 (g) echoes the provisions of CPLR 3212 (h). Accordingly, we find that the anti-SLAPP law is in derogation of the common law and must be strictly construed (McKinney's Cons Laws of NY, Book 1, Statutes § 311; *Guerrero*, 10 AD3d at 117; *Yeshiva Chofetz Chaim Radin, Inc. v Village of New Hempstead*, 98 F Supp 2d 347, 362 [2000]).

In the matter before us, plaintiff maintains that he is not a public applicant or permittee within the meaning of Civil Rights Law § 76-a; that the alleged defamatory statements were not materially related to any effort on the part of defendants to comment on or oppose any application or permit; and that the complaint had a good faith basis in law and fact.

Defendants, on the other hand, contend that once plaintiff lobbied for a specific zoning change for the EPCAL property so that he could operate his commercial venture, he put himself in the de facto position of seeking governmental approval for a proposed use which, in defendants' view, is tantamount to applying for a permit to conduct such a business. Defendants also point out that plaintiff filed a notice of claim with the Town of Riverhead in which he asserted that the recently adopted zoning restrictions constituted an unlawful restraint on trade. Plaintiff claimed $5 million in damages for restraint of trade, tortious interference, defamation, and violations of the Public Officers Law. Defendants maintain that by filing such notice of claim, plaintiff attempted to persuade the Town that he should be excepted from the zoning resolution, and that his actions also constituted a de facto application for government permission to operate his business.

We agree with the motion court, however, that plaintiff cannot be deemed a public applicant or permittee based upon the fact that he aggressively advocated a particular agenda directly to Town Board members and at public meetings, and took steps to commence litigation against the Town. Moreover, defendants present absolutely no evidence that plaintiff made any attempt to comply with, or initiate an application process under, the Town of Riverhead's specific procedures governing applications for zoning variances. In view of the narrow construction which must be afforded Civil Rights Law §§ 70-a and 76-a, we find, as did the motion court, that merely advocating one's agenda at public meetings, or initiating legal action, does not bring an individual within the ambit of an applicant or permittee as defined in Civil Rights Law § 76-a (1) (b).

Lastly, we reject defendants' argument that plaintiff's motion for summary judgment, which was made one month after issue

was joined, was premature because the lack of discovery severely compromised their ability to demonstrate that plaintiff was, in fact, a permittee. It is settled that a claimed need for discovery, without some evidentiary basis indicating that discovery may lead to relevant evidence, is insufficient to avoid an award of summary judgment (*see e.g. Cioe v Petrocelli Elec. Co., Inc.*, 33 AD3d 377 [2006]; *Bank of Am. v Tatham*, 305 AD2d 183 [2003]). Stated another way, the " 'mere chance that somehow, somewhere, on cross examination or otherwise [defendants] will uncover something which might add to their case but obviously of which now they have no knowledge, is mere speculation and conjecture and is not sufficient' " (*Trails W. v Wolff*, 32 NY2d 207, 221 [1973], quoting *Hurley v Northwest Publs., Inc.*, 273 F Supp 967, 974 [1967], *affd* 398 F2d 346 [1968]; *see also Bachrach v Farbenfabriken Bayer AG*, 36 NY2d 696, 697 [1975] ["Hope alone will not raise a triable issue"]).

In the matter at bar, given that an application or permit would be a matter of public record, defendants have not explained what additional facts are unavailable to them or are exclusively within plaintiff's control. Defendants are already aware of plaintiff's lobbying efforts and additional information as to the extent of those efforts would not alter the determination that plaintiff was not an applicant or permittee.

Accordingly, the order of the Supreme Court, New York County (Emily Jane Goodman, J.), entered June 13, 2006, which granted plaintiff's motion for summary judgment dismissing defendants' counterclaim, should be affirmed, without costs.

LIPPMAN, P.J., ANDRIAS and GONZALEZ, JJ., concur.

Order, Supreme Court, New York County, entered June 13, 2006, affirmed, without costs.