OPINION OF THE COURT
Chambers, J.
At issue here is whether the Noerr-Pennington doctrine derived from Eastern Railroad Presidents Conference v Noerr Motor Freight, Inc. (365 US 127 [1961]) and Mine Workers v Pennington (381 US 657 [1965]), which provides First Amendment protections for persons petitioning the government for redress, applies to a cause of action sounding in libel. The NoerrPennington doctrine does not apply to causes of action sounding in libel. However, allegedly libelous statements addressed to the government for redress enjoy a qualified privilege, requiring proof of malice (see McDonald v Smith, 472 US 479 [1985]).
*189 The plaintiff is the president and major shareholder of Travelspan G.T., Inc., S.A. (hereinafter Travelspan Guyana), and Travelspan, Inc. (hereinafter Travelspan NY). On or about April 11, 2006, Travelspan Guyana submitted an application to the United States Department of Transportation (hereinafter the DOT) for authority to operate scheduled combined passenger, cargo, and air mail transportation services between Georgetown, Guyana, and points in the United States.
On or about May 3, 2006, the plaintiff commenced the instant action to recover damages for libel. The plaintiff alleged that on or about April 26, 2006, the appellant Frank Singh filed a written objection with the DOT stating that the plaintiff had “no moral standards and no credibility,” “robbed and cheated” his prior company Transwings Airways Corp. (hereinafter Trans-wings), “left thousands of passengers stranded nor did he ever refund them ... for their airfare and hotel costs,” “raided” yet another venture “and left all the shareholders holding worthless shares,” and “is a man of no morality, someone who has hoodwinked and robbed honest and simple people.”
In addition, the plaintiff alleged that “Defendant Singh also distributed a copy of what purports to be a ‘paid advertisement’ allegedly published in a Caribbean newspaper,” stating that the plaintiff was a “scourge ... on such a society; repulsive blight to the Indo Caribbean community at large,” and that he “hoodwinked” businessmen who “lost thousands of dollars, through plain theft or gross mismanagement.” The complaint alleged that Frank Singh sent a copy of the letter to the DOT and a copy of the advertisement to “eleven (11) attorneys representing airlines operating flights between Guyana and the United States, or otherwise interested in Travelspan Guyana’s Application.”
The plaintiff alleged that on or about May 2, 2006, the appellant Buddy D. Ramsaran sent a letter to the DOT stating that the plaintiff previously, operated “a charter service that became defunct directly caused [sic] by his mismanagement and misappropriation of funds that resulted in a tremendous loss to investors” and this letter was published on the DOT’s public Web site.
The complaint further alleged that the appellants knew the statements to be false and published them with the intent to injure the plaintiff in his profession and jeopardized and delayed the DOT’s approval of his application.
The appellant Ramsaran made a pre-answer motion, inter alia, to dismiss the complaint insofar as asserted against him *190 pursuant to CPLR 3211 (a) (7). The appellant Frank Singh served a verified answer and separately moved, inter alia, to dismiss the complaint insofar as asserted against him pursuant to CPLR 3211 (a) (7).
In support of his motion, the appellant Ramsaran submitted an affidavit stating that in 1989 he assisted the plaintiff in the formation and organization of Transwings and introduced the plaintiff to investors who contributed between $25,000 and $125,000 to Transwings, which closed down operations without accounting for the investors’ money. Ramsaran further stated that a few years later, the plaintiff "lost hundreds of thousands of dollars of investor money” in a “similar adventure.” Ramsaran stated that reporting the plaintiffs activities to the DOT was protected by the United States Constitution and Civil Rights Law § 76-a.
In support of his motion, the appellant Frank Singh submitted an affidavit stating that he was an investor in Transwings and lost his investment of $40,000 plus an unpaid loan of $51,000 when Transwings was dissolved "as a result of what [he] believe[s] to be fraudulent accounting as committed by Plaintiff with the help of [an] accountant.” Singh stated that the plaintiff used the profits from Transwings to form another corporation, Surplus Air. Singh stated that the plaintiffs action was a "strategic lawsuit against public participation” in violation of the First Amendment to the United States Constitution and Civil Rights Law § 76-a.
In opposition to these contentions, the plaintiff stated in his affidavit that he set up Transwings in or about 1988 and started operating charter flights to Puerto Rico in December 1988. He acknowledged that the appellants lost their investments in Transwings. However, he denied that he “stole or mismanaged any money” from Transwings. He further noted that "an FBI investigation . . . failed to reveal any proof of mismanagement of funds.” He claimed that Transwings failed because the shareholders, including the appellant Frank Singh, demanded premature distributions of dividends, and $50,000 to $75,000 in checks payable to Transwings were “fraudulently endorsed to a third-party and cashed by a bank in Puerto Rico.”
The plaintiff hired an accountant to examine Transwings’s books and records. The accountant submitted an affidavit stating that he "found absolutely no proof of any fraud, misappropriation and/or mismanagement of funds” committed by the plaintiff.
*191 With respect to the appellant Ramsaran, the plaintiff stated that he recorded a telephone conversation wherein Ramsaran admitted he had no personal knowledge of any wrongdoing but “heard of it from other people, including Defendant Frank Singh.”
In reply, the appellant Frank Singh stated that he did not bear personal animosity toward the plaintiff and had not thought of him for some time until an attorney for E-Jet, which is the plaintiffs competitor, “requested [that he] forward a synopsis of [his] dealings with Plaintiff.” Singh complied and counsel for E-Jet prepared a letter to the DOT restating that information, signed Singh’s name to the letter, and forwarded the letter to the DOT.
On November 3, 2006, the plaintiffs application to the DOT was granted in part, authorizing him to fly aircraft between Guyana and New York. However, permission to operate in Florida was deferred.
The Supreme Court denied the appellants’ motions, finding that the plaintiffs allegations fell under the “sham” exception to the Noerr-Pennington doctrine (see Eastern Railroad Presidents Conference v Noerr Motor Freight, Inc., 365 US at 144). The Supreme Court further found that dismissal pursuant to Civil Rights Law § 76-a was not warranted on the ground that the plaintiff “made an adequate showing that his complaint has a substantial basis in law.”
The so-called Noerr-Pennington doctrine provides that private individuals “associating together in an attempt to persuade the legislature or the executive to take particular action with respect to a law that would produce a restraint or a monopoly” does not violate antitrust laws (Eastern Railroad Presidents Conference v Noerr Motor Freight, Inc., 365 US at 136). Pursuant to the Noerr-Pennington doctrine, “citizens who petition the government for governmental action favorable to them cannot be prosecuted under the antitrust laws” (Alfred Weissman Real Estate v Big V Supermarkets, 268 AD2d 101, 106-107 [2000]; see Mine Workers v Pennington, 381 US 657 [1965]; Eastern Railroad Presidents Conference v Noerr Motor Freight, Inc., 365 US at 136). “Although the Noerr-Pennington doctrine initially arose in the antitrust field, the courts have expanded it to protect First Amendment petitioning of the government from claims brought under Federal and State Law” (Alfred Weissman Real Estate v Big V Supermarkets, 268 AD2d at 107; see Concourse Nursing Home v Engelstein, 278 AD2d 35 [2000]). The *192 motives of the persons petitioning the government for relief are irrelevant—the Noerr-Pennington doctrine applies even if the petitioners acted with selfish motives or “anticompetitive” intent (see Columbia v Omni Outdoor Advertising, Inc., 499 US 365, 380 [1991]; Alfred Weissman Real Estate v Big V Supermarkets, 268 AD2d at 107).
There is a “sham” exception to the Noerr-Pennington doctrine which applies in “situations in which persons use the governmental process—as opposed to the outcome of that process—as an anticompetitive weapon” (Columbia v Omni Outdoor Advertising, Inc., 499 US at 380; see Alfred Weissman Real Estate v Big V Supermarkets, 268 AD2d at 107). The “sham” exception to the Noerr-Pennington doctrine has an objective and subjective element. The objective element requires that the defendant’s conduct must be objectively baseless with no reasonable expectation of success (see Professional Real Estate Investors, Inc. v Columbia Pictures Industries, Inc., 508 US 49, 60 [1993]). The subjective element requires that the defendant act, not with the intent of influencing governmental action, but rather with the intent to “interfere directly with the business relationships of a competitor” (Professional Real Estate Investors, Inc. v Columbia Pictures Industries, Inc., 508 US at 60-61; see Eastern Railroad Presidents Conference v Noerr Motor Freight, Inc., 365 US at 136, 144). If the objective element is not satisfied, the court is precluded from examining the subjective motivation for the conduct (see Professional Real Estate Investors, Inc. v Columbia Pictures Industries, Inc., 508 US at 60; Zeller v Consolini, 59 Conn App 545, 563 n 8, 758 A2d 376, 386 n 8 [2000]), and the “sham” exception is not applicable.
In the instant case, the plaintiff acknowledged that some of the allegations against him are true. For example, the plaintiff did not deny that travelers were left stranded and their money was not returned. In addition, the plaintiffs prior corporation, Trans wings, closed down and its investors lost their investments. However, the plaintiff blamed such financial woes on the theft of checks by a third party and the appellants’ insistence on the payment of dividends, while the appellants blamed the financial woes on the plaintiffs mismanagement and alleged dishonesty. In view of the foregoing, the statements were not entirely baseless, and the objective element of the “sham” exception was not satisfied.
Since the objective element was not satisfied, the subjective intent of the appellants is not relevant. Nevertheless, we note *193 that the plaintiff failed to satisfy the subjective element as well, since he failed to allege facts in his complaint “from which it can be inferred” that the appellants “had no genuine interest in seeking governmental action” (Villanova Estates, Inc. v Fieldston Prop. Owners Assn., Inc., 23 AD3d 160, 161 [2005]; see I.G. Second Generation Partners, L.P. v Duane Reade, 17 AD3d 206, 208 [2005]). Indeed, the plaintiff in his complaint acknowledges that the appellants’ conduct “jeopardized and/or delayed the approval of Travelspan Guyana’s application by the DOT” and the letters sent out by Frank Singh to parties in addition to the DOT were to attorneys “interested in Travelspan Guyana’s Application.” Thus, from these facts, it can be inferred that the appellants had a “genuine interest in seeking governmental action” (Villanova Estates, Inc. v Fieldston Prop. Owners Assn., Inc., 23 AD3d at 161).
 Nevertheless, those branches of the appellants’ motions which were to dismiss the complaint insofar as asserted against each of them pursuant to CPLR 3211 (a) (7) were properly denied for reasons other than those cited by the Supreme Court. With respect to libel, the doctrine enunciated in McDonald v Smith (472 US 479 [1985]) applies in lieu of the NoerrPennington doctrine (see Doe v Alaska Superior Ct., Third Jud. Dist., 721 P2d 617 [Alaska 1986]; Myers v Levy, 348 III App 3d 906, 919, 808 NE2d 1139, 1151-1152 [2004]; Sturgeon v Retherford Publs., Inc., 987 P2d 1218 [Okla 1999]; Carolinas Cement Co. v Riverton Inv. Corp., 53 Va Cir 69 [2000]; Harris v Adkins, 189 W Va 465, 432 SE2d 549 [1993]; Richmond v Thompson, 130 Wash 2d 368, 922 P2d 1343 [1996]; see also Miner v Novotny, 304 Md 164, 498 A2d 269 [1985]). In McDonald v Smith (472 US 479 [1985]), the Supreme Court of the United States found that letters to the President of the United States about a prospective nominee for United States Attorney were covered by the First Amendment guarantee of the right to petition the government for redress of grievances. The Court further found that the First Amendment did not provide an absolute privilege for libel. Instead, the Court imposed a qualified privilege requiring proof of malice (see McDonald v Smith, 472 US at 482-483, 485) as defined in New York Times Co. v Sullivan (376 US 254 [1964]), to wit, knowledge that the material was false or reckless disregard as to whether the material was true or false. The complaint contains sufficient allegations of malice to withstand a motion to dismiss pursuant to CPLR 3211 (a) (7) (see Kotowski v Hadley, 38 AD3d 499 [2007]).
*194 Turning to New York State statutory law, Civil Rights Law § 76-a is applicable since the instant action is an action “involving public petition and participation,” defined as an “action . . . for damages that is brought by a public applicant or permittee, and is materially related to any efforts of the defendant to report on, comment on, rule on, challenge or oppose such application or permission” (Civil Rights Law § 76-a [1]). However, a defendant in such a suit may still be liable for libel when proof of malice, as defined in New York Times Co. v Sullivan (376 US 254 [1964]), is established. Civil Rights Law § 76-a (2) provides that in such actions
“damages may only be recovered if the plaintiff, in addition to all other necessary elements, shall have established by clear and convincing evidence that any communication which gives rise to the action was made with knowledge of its falsity or with reckless disregard of whether it was false, where the truth or falsity of such communication is material to the cause of action at issue” (emphasis added), thus applying the definition of malice.
Civil Rights Law § 76-a was passed to protect citizens facing litigation arising from their public petitioning and participation (see 600 W 115th St. Corp. v Von Gutfeld, 80 NY2d 130, 137 n 1 [1992], cert denied 508 US 910 [1993]), by deterring strategic litigation against public participation, also known as SLAPP suits (see Governor’s Mem approving L 1992, ch 767, 1992 NY Legis Ann, at 478). Related provisions passed in the same bill include Civil Rights Law § 70-a, which permits a defendant in such actions to recover costs and an attorney’s fee, CPLR 3211 (g) and CPLR 3212 (h), which require the plaintiff, on a motion to dismiss pursuant to CPLR 3211 (a) (7) for failure to state a cause of action or for summary judgment pursuant to CPLR 3212, to demonstrate that the action “has a substantial basis in fact and law or is supported by a substantial argument for an extension, modification or reversal of existing law” (see Hariri v Amper, 51 AD3d 146, 150-151 [2008]).
In an action covered by Civil Rights Law § 76-a, the plaintiff bears the burden of establishing by clear and convincing evidence that defamatory false statements were made with knowledge of their falsity or with reckless disregard to whether the statements were true or false (see T.S. Haulers v Kaplan, 295 AD2d 595, 598 [2002]). Here, the court properly denied those *195 branches of the appellants’ motions which were to dismiss the complaint insofar as asserted against them pursuant to CPLR 3211 (a) (7), since the plaintiff alleged malice, and alleged facts indicating that the appellants knew that portions of the statements made were false or made statements with reckless disregard to whether the statements were true or false.
In light of our determination, at this juncture the appellants are not entitled to costs and an attorney’s fee pursuant to Civil Rights Law § 70-a.
The appellants’ remaining contention is not properly before the Court.
Accordingly, the order is affirmed insofar as appealed from, with one bill of costs.
Skelos, J.E, Dillon and Leventhal, JJ., concur.
Ordered that the order is affirmed insofar as appealed from, with one bill of costs.